FILED
United States Court of Appeals
Tenth Circuit

May 26, 2016

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROBERT E. ADAIR,

     Plaintiff - Appellant,

v.

No. 15-7067

CITY OF MUSKOGEE, OKLAHOMA, a
municipal corporation,

     Defendant - Appellee.
_____

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 6:15-CV-00053-RAW)**
_____

Steven R. Hickman, Frasier, Frasier & Hickman, Tulsa, Oklahoma, for Plaintiff-
Appellant.

Clark W. Crapster, Steidley & Neal, Tulsa, Oklahoma (Sean M. McKelvey, Steidley &
Neal, McAlester, Oklahoma, with him on the briefs), for Defendant-Appellee.
_____

Before **GORSUCH**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

Robert Adair was a firefighter with the City of Muskogee, Oklahoma (the City)

when he injured his back during a training exercise. As a result of his injury, Adair

completed a functional-capacity evaluation that measured and limited his lifting

capabilities. After two years on paid leave, Adair received a workers' compensation award definitively stating that Adair's lifting restrictions were permanent. The same month he received his award, Adair retired from the Muskogee Fire Department (the Department).

Adair argues that his retirement was a constructive discharge—he claims that the City forced him to choose between being fired and retiring, which, he contends, discriminated against him in violation of the Americans with Disabilities Act of 1990 (ADA), Pub. L. No. 101-336, 104 Stat. 327 (current version at 42 U.S.C. § 12101 *et seq.*), and retaliated against him for receiving a workers' compensation award in violation of the Oklahoma Workers' Compensation Act, Okla. Stat. tit. 85, § 341(A) (2011), *repealed by* 2013 Okla. Sess. Laws 208, § 171 (current version at Okla. Stat. tit. 85A, § 7).[1] The district court granted the City's motion for summary judgment. Unfortunately, in analyzing Adair's discrimination claims, neither the parties nor the district court recognized the changes that Congress made to the ADA in enacting the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553 (codified at 42 U.S.C. § 12101 *et seq.*).

Notwithstanding this error, and while exercising jurisdiction under 28 U.S.C. § 1291, we affirm. Even if the City regarded Adair as having an impairment, Adair cannot show that he was qualified to meet the physical demands required of firefighters or that the City could reasonably accommodate his lifting restrictions.

---

[1] The district court ruled that this earlier version of Oklahoma law applies to Adair's claim. Neither party challenges this ruling on appeal.

2

Adair also challenges, as an illegal medical examination, the functional-capacity evaluation that the City required he complete, but the evaluation arose from Adair's workers' compensation claim, was job-related, and was a business necessity. Adair's retaliatory-discharge claim also fails as a matter of law because Adair cannot show that the City's non-retaliatory reason for terminating him (his permanent lifting restrictions) was pretext.

## BACKGROUND

Because this is an appeal from a grant of summary judgment, the following facts are either undisputed or construed in the light most favorable to Adair. *See Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1078 (10th Cir. 1997). We have drawn all reasonable inferences from the factual record in Adair's favor. *See id.*

### A.    Adair's Responsibilities with the Muskogee Fire Department

On May 6, 1981, Adair began his career as a firefighter with the Department. He served in the Department for about 32 years, with the last four years as the Department's Hazardous-Materials (HazMat) Director. The Department provides a written job description for the position of HazMat Director, and the description requires the HazMat Director "to respond to all Level II and Level III hazmat responses, and [to] assume command of hazmat operations." Appellant's App. at 48. The description also requires the HazMat Director "to attend and pass all classes and schools and be confident in his ability and the team's ability in the [HazMat Director] to command the hazmat team in all situations." *Id.*

3

In addition, the Oklahoma Administrative Code provides a "[d]escription of essential functions of all eligible firefighters." Okla. Admin. Code § 270:10-1-7 (2016). "To be eligible for entrance into the [Firefighters Pension and Retirement] System as a paid firefighter, a candidate must meet minimum medical requirements which reflect the ability of the candidate to perform the essential functions of fire suppression, prevention and life safety . . . ." *Id.* Firefighters must be able to "search[], find[], and rescue-drag[] or carry[] victims ranging from newborns up to adults weighing over 200 lb to safety despite hazardous conditions and low visibility." *Id.* § 270:10-1-7(6). Firefighters must also be able to "climb[] 6 or more flights of stairs while wearing fire protective ensemble weighing at least 50 lb or more and carrying equipment/tools weighing an additional 20 to 40 lb." *Id.* § 270:10-1-7(4).

Finally, the Oklahoma Administrative Code includes a "physical performance/agility test" for firefighter candidates that "may be incorporated into an objective evaluation as to whether a candidate meets the initial criteria in order to perform the essential functions of a firefighter as described in Section 270:10-1-7." *Id.* § 270:10-1-6(a). Among other requirements, the test requires that "[t]he candidate, given a weight of 125 lb. (57 kg.)[,] shall lift the weight from the floor and carry the weight 100 ft. . . . without stopping." *Id.* § 270:10-1-6(c)(5).

Adair asserts that during his four years as HazMat Director, he "never performed firefighting or other firefighter duties, other than being director of the [HazMat] operation." Appellant's Opening Br. at 3. Adair "could not contemplate a

4

situation where it would be necessary for him to fight a fire." *Id.* But Adair concedes that the HazMat Director's "job does have some lifting involved." Appellant's App. at 51. And as part of his functional-capacity evaluation, Adair said that "his job duties as a firefighter for the City" required him to be able to "walk, run, lift, push, pull, bend, carry, climb and squat." *Id.* at 60. Though Adair asserts that his "job as HazMat director did not require him to do the work of a firefighter," he does not dispute that he was a firefighter. *Id.* at 101. Adair also testified that the Department had a policy, which "ha[d] been talked about at the fire department for years," that firefighters could not have "lifting restrictions." *Id.* at 51. His "understanding" was that "in order to work as a fireman, you have to have unlimited restrictions and you need to be able to lift any amount of weight." *Id.* The Department's Fire Chief, Derek Tatum, also testified that to work as a firefighter, the person "would have to have a total release from a doctor." *Id.* at 214.

## B. Adair's Injury and Termination

In March 2012, Adair injured his back while he was at a training exercise in Utah. Adair said that "he was going downstairs with equipment on and missed a tread resulting in a loss of balance and turning of body and twisting to the right." *Id.* at 59. The next month, Adair filed a workers' compensation claim for his injury. Soon after filing his workers' compensation claim, Adair saw Dr. James H. Baker and later testified that Dr. Baker told Adair that Adair was unable to return to work. Adair informed the Fire Chief about this. Adair further testified that on April 16, 2012, Dr. Baker released Adair to return to work, which Adair did that same day. But about six

5

and a half hours into his eight-hour shift, the Fire Chief called Adair to tell him "that the City was rejecting [his] return back to work." *Id.* at 164. On September 5, 2012, Adair had his first visit with his chosen doctor, Dr. David R. Hicks, at which time Dr. Hicks "ordered what was a called a functional capacity evaluation, which is basically a test of what [Adair's] physical capacity is, what [he could] safely do." *Id.* at 121.

On October 15, 2012, Adair completed the functional-capacity evaluation. The evaluation's Functional Activities Summary showed that Adair could (1) occasionally lift 105 pounds from floor to shoulder; (2) occasionally lift 70 pounds from waist to shoulder; (3) occasionally lift 90 pounds from floor to waist; (4) occasionally carry 85 pounds; and (5) frequently lift 80 pounds from floor to waist, waist to shoulder, and floor to shoulder. The evaluation indicated that "Adair demonstrated a maximal lifting capacity of 105 pounds [o]ccasionally and 90 pounds [f]requently." *Id.* at 57.

After the functional-capacity evaluation, Adair saw three doctors, all of whom concluded that Adair was permanently injured and could not perform the duties of a firefighter. First, on April 25, 2013, Dr. James A. Rodgers concluded that Adair "is at risk to go back to work in any position that requires him to bend, stoop, or lift 75 to 125 pounds," which Adair told Dr. Rodgers "is the requirement as a firefighter." *Id.* at 74. Dr. Rodgers also found that "going up and down ladders with weakness in [Adair's] right leg that may not totally clear, would also be problematic." *Id.* Second, on March 19, 2014, Dr. Baker concluded that Adair "cannot perform the duties of a firefighter, limited by his back pain with minimal exertion/movement." *Id.* at 76. And

6

third, on March 20, 2014, Dr. Hicks concluded that Adair "has permanent restrictions" and "[d]ue to pain he cannot perform the duties of a firefighter safely." *Id.* at 98.

On March 4, 2014, Adair received his workers' compensation award. The Oklahoma Workers' Compensation Court concluded that from Adair's training-exercise fall, Adair had "sustained 12 percent permanent partial impairment to the body as a whole attributable to the low back." *Id.* at 226 (capitalization omitted). According to Adair, after his workers' compensation award, the City "encouraged" him "to take a disability retirement rather than be terminated." *Id.* at 115. Adair said that, "[b]eing left with no apparent alternative from what the City required, and at their suggestion, [he] chose disability retirement rather than termination." *Id.*

On March 18, 2014, Adair applied for a disability-retirement pension for his 32 years of service with the Department.[2] On March 26, 2014, the Muskogee Firefighters Pension and Retirement Board (the State Board) met to discuss, among other things, Adair's disability-retirement pension application. On April 11, 2014, the State Board representative reviewed Adair's disability-retirement pension application and concluded that Adair's application "would meet the provisions of state statutes and the administrative rules . . . ." *Id.* at 80. In a letter dated April 18, 2014, the State

---

[2] Adair dated his disability-retirement-pension application March 18th, but the application was notarized on the 19th, with the notary saying, "I hereby certify that the above and foregoing application and release was executed by Adair on this 19th day of March." Appellant's App. at 84.

7

Board informed Adair that it approved Adair's disability-retirement pension application and made his pension effective April 1, 2014.

**C.    Adair's Current Claim and the District Court's Summary-Judgment Order**

On February 2, 2015, Adair sued the City in state court under the ADA and the anti-retaliation provisions of the Oklahoma Workers' Compensation Act. On February 10, 2015, the City removed the action to the United States District Court for the Eastern District of Oklahoma.

After completing discovery, the City moved for summary judgment on all of Adair's claims. In its summary-judgment motion, the City argued that Adair "accepted many monetary benefits from government sources while setting up a contrived lawsuit for more money, claiming that the [City] did something they were not statutorily capable of doing." *Id.* at 33. Specifically, the City argued that the State Board—not the City or the Department—was responsible to resolve any "dispute as to whether [Adair] must retire." *Id.* The City contended that rather than seeking an administrative resolution through the State Board, Adair "chose to voluntarily retire due to an on-the-job injury, which he affirmatively claimed to the State Board was a permanent disability preventing him from continuing to work." *Id.*

The City further contended that Adair's claim failed under the ADA. The City argued that Adair could not show that he was a "qualified individual" under the ADA for two reasons: (1) Adair "already represented to the State Board that he was unable to continue his job due to an in-the-line-of-duty injury causing a permanent

8

disability," and (2) Adair acknowledged "that permanent restrictions on weight lifting capabilities meant that the restricted employee could no longer serve as a firefighter." *Id.* at 40. In other words, the City argued that Adair "did not meet the requisite physical standards for being a firefighter under his employer's known policy, and if he disagreed with the policy, the matter had to be addressed with the State Board." *Id.* at 41. The City further contended that Adair was not disabled under the ADA, because his lifting restrictions "merely prevented [Adair] from performing one specific type of job." *Id.* at 42. The City also argued that Adair's retaliatory-discharge claim failed as a matter of law because Adair "cannot establish a retaliatory discharge claim based on a provision that expressly permits termination of an employee who is unable to perform his or her job duties after suffering an on-the-job injury." *Id.* at 44 (citing *Garza v. Henniges Auto.*, No. CIV-12-1023-D, 2013 WL 6858690, at \*5 (W.D. Okla. Dec. 30, 2013) (unpublished)).

In response, Adair argued that "the determination of the State Board is not determinative in this discrimination case" and "the board determination was based on Defendant's own (illegal) determination of Plaintiff's ability to do the job." *Id.* at 107–08. Adair contended that "applicable federal law provides that [Adair's] obtaining of his pension or faring differently under alternative procedures do not bar his claim." *Id.* at 108. Adair also argued that the City violated the ADA in two ways: (1) the City's requiring him to undergo the functional-capacity evaluation was "an illegal medical examination," and (2) the City discriminated against Adair based on a disability. *Id.* at 109. Addressing the latter argument, Adair asserted that he was a

9

qualified individual because "the ADA requires that physical requirements for the job, rather than lack of medical impairments, be the legal test" and that he had "met the physical requirements to do the job." *Id.* at 112. Adair also argued that his retaliatory-discharge claim should survive summary judgment because his receiving the workers' compensation award "was the impetus to termination" and "termination within the month of the event is sufficient to get to the jury." *Id.* at 113.

The district court granted the City's motion on all of Adair's claims. First, the court granted the City summary judgment on Adair's ADA-discrimination claim, concluding that Adair's disability showing failed because "[t]he job of firefighter does not constitute a 'class of jobs' or a 'broad range of jobs in various classes' for purposes of establishing a 'substantial limitation' in the major life activity of 'working.'" *Id.* at 260. Further, the court granted the City summary judgment on Adair's claim premised on the functional-capacity evaluation, concluding that "a voluntary medical examination in connection with the employee['s] pursuit of a workers' compensation claim is job-related and consistent with business necessity." *Id.* at 261. Finally, regarding Adair's retaliatory-discharge claim, the court rejected Adair's argument about temporal proximity. The court concluded that Adair offered nothing more than bald assertions without citations to the record and failed to "show a pattern of termination of workers who filed claims, or of pressure put on workers not to file claims." *Id.* at 257. Additionally, the court held that the City had presented a non-retaliatory reason for Adair's discharge—Adair's lifting restrictions—and that Adair had failed to rebut this reason with anything but his HazMat Director job title.

10

The court rejected Adair's argument about his job title excusing him from performing firefighter duties, explaining that "[Adair] <u>was</u> a firefighter employed by the City of Muskogee, and the Muskogee Fire Department has a policy that a firefighter must be unrestricted in lifting weight." *Id.* at 259 (emphasis in original). Adair timely appealed.

## DISCUSSION

On appeal, Adair makes four claims: (1) the district court erred in granting summary judgment on his ADA-discrimination claim because the City regarded Adair as having an impairment and the Department's no-restrictions policy was an improper qualification standard; (2) the district court erred in granting summary judgment on his illegal-medical-examination claim under the ADA because he involuntarily complied with the functional-capacity evaluation, which the City failed to show was job-related and a business necessity; (3) the district court erred in granting summary judgment on Adair's retaliatory-discharge claim because the court did not consider Adair's evidence of causation; and (4) the district court erred in requiring Adair to calculate emotional damages in his initial disclosures. We discuss, and reject, each argument in turn.

### A. Standard of Review

We review de novo a district court's grant of summary judgment. *EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

11

"A genuine dispute as to a material fact 'exists when the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.'" *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011) (quoting *Zwygart v. Bd. of Cty. Comm'rs*, 483 F.3d 1086, 1090 (10th Cir. 2007)).

## B.    Adair's Disability-Discrimination Claim

First, Adair argues that the City discriminated against him based on a disability. He asserts that he was "regarded as" having an impairment, and that the City's no-restrictions policy for firefighters was an improper qualification standard. Appellant's Opening Br. at 12.

Adair, the City, and the district court all failed to evaluate Adair's claims under the governing version of the ADA. Instead of relying on the ADAAA, they relied on the ADA. We first outline the relevant substantive changes that Congress made to the ADA by enacting the ADAAA and then apply the ADAAA standards for "regarded as" claims. Although we conclude that Adair might be able to show that the City regarded him as having an impairment under the ADAAA, Adair's disability-discrimination claim would still fail because Adair was not qualified for the position of firefighter.

### 1.    *The Substantive Changes that the ADAAA Made to "Regarded As" Claims*

The ADAAA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Thus, to establish a prima facie case of

12

discrimination under the ADAAA, a plaintiff must show that (1) he is disabled as defined under the ADAAA; (2) he is qualified, with or without reasonable accommodation by the employer, to perform the essential functions of the job; and (3) he was discriminated against because of his disability. *See Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015). Here, we address how the ADAAA changed the definition of "disability" as used in disability-discrimination claims.

On July 26, 1990, when Congress first enacted the ADA, Congress defined "disability" of individuals as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." ADA, § 3(2). In *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999), *overturned by* ADAAA, 122 Stat. 3553, the Supreme Court narrowly construed the third prong of that original definition. The Court explained that to bring a "regarded as" claim, the plaintiff must show that either "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489. In other words, the Court interpreted the third prong as "requir[ing] a plaintiff to plead and prove that she was regarded as having an impairment that fit the terms of the first prong—that is, that she was regarded as having an impairment that substantially limited one or more major life activities." *Mercado v. Puerto Rico*, 814 F.3d 581, 587 (1st Cir. 2016) (citing *Sutton*, 527 U.S. at 489). Years later, the Supreme Court further limited the

13

instances when a plaintiff could show that his impairment would substantially limit a major life activity. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002) (explaining "that to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives"), *overturned by* ADAAA, 122 Stat. 3553.

In 2008, by passing the ADAAA, Congress abrogated these Supreme Court rulings. *See* ADAAA, § 2(b)(2)–(4) ("The purposes of this Act are . . . to reject the requirement enunciated by the Supreme Court in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) and its companion cases . . . [and] to reject the standards enunciated by the Supreme Court in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) . . . ."). In Congress's view, both *Sutton* and *Williams* had improperly "narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect." *Id.* § 2(a)(4). To reverse course, Congress passed the ADAAA with the stated goal of ensuring that "[t]he definition of disability . . . be construed in favor of broad coverage." *Id.* § 4(a). To do so, Congress amended the definition of the term "disability." Under the ADAAA's amended definition, "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). In addition, the

14

ADAAA modified the scope of a "regarded as" claim by defining "being regarded as having such an impairment" as follows:

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*.

*Id.* § 12102(3)(A) (emphasis added).

Congress's addition at the end of this definition is significant. Unlike an impairment as defined in subsections (A) or (B), an impairment under § 12102(1)(C) need not limit or even be perceived as limiting a major life activity—the employer need only regard the employee as being impaired, whether or not the employer also believed that the impairment prevented the employee from being able to perform a major life activity. Under the ADAAA, the only qualification for an impairment in a "regarded as" claim is that the impairment not be "transitory and minor." *Id.* § 12102(3)(B); *see id.* ("Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.").

Thus, the ADAAA has defined disability differently for "regarded as" claims than did the ADA and our caselaw interpreting the ADA. Today, a plaintiff bringing a "regarded as" claim "needs to plead and prove only that she was regarded as having a physical or mental impairment." *Mercado*, 814 F.3d at 588. Unlike pre-ADAAA plaintiffs, an ADAAA plaintiff no longer needs to plead and prove that the actual or perceived impairment "substantially limited one or more major life activities." *Id.*; *see*

15

*Morriss v. BNSF Ry. Co.*, __ F.3d __, 2016 WL 1319407, at *5 (8th Cir. Apr. 5, 2016) ("[T]he EEOC [has taken] the position that 'it is not necessary to determine whether an individual is 'substantially limited' in any major life activity' for 'regarded as' disabled cases." (quoting 29 C.F.R. app. § 1630.2(j))).

In the district court and in their appellate briefing, both parties have premised their arguments on the pre-ADAAA standard. The district court granted the City summary judgment on Adair's disability-discrimination claim under the pre-ADAAA standard, concluding that Adair had failed to show a disability because "[t]he job of firefighter does not constitute a 'class of jobs' or a 'broad range of jobs in various classes' for purposes of establishing a 'substantial limitation' in the major life activity of 'working.'" Appellant's App. at 260. This was error. The alleged discrimination against Adair took place in 2014, and the pre-ADAAA law regarding the requirements for a "regarded as" claim on which the district court relied in its summary-judgment order no longer applied.

Under the ADAAA, it doesn't matter if Adair's lifting restriction did or didn't "substantially limit" him from being able to perform "a major life activity." *See Sutton*, 527 U.S. at 489. Under the ADAAA, for a plaintiff alleging disability discrimination to show that the employer regarded him as having an impairment, the plaintiff must show that (1) he has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action. Thus, in this case, Adair would need to show only that (1) his lifting restrictions are an actual or perceived impairment, (2) the

16

lifting restrictions are neither transitory nor minor, and (3) the City was aware of and therefore perceived the impairment at the time of Adair's termination. As the City acknowledged during oral argument, the ADAAA's substantive changes to "regarded as" claims would have altered the district court's analysis—Adair could show under the ADAAA that the City regarded him as having an actual or perceived impairment. Facing this conceded error, the City argues that Adair's disability-discrimination claim would still fail because he is not a qualified individual. We agree.

2.      *Whether Adair Was Qualified for the Position of Firefighter*

Even if Adair could show that he is disabled as defined by the ADAAA, Adair would also need to show that he is a qualified individual for the job that he seeks. Although the ADAAA expanded the scope of "regarded as" claims, "Congress's 2008 amendments to the ADA did not fundamentally change the qualification requirement." *Brown v. City of Jacksonville*, 711 F.3d 883, 888 (8th Cir. 2013). To bring a disability-discrimination claim under the ADAAA, just as it was under the ADA, a plaintiff must still show that he is a "qualified individual" for the position that he seeks. *See* 42 U.S.C. § 12112(a) (prohibiting discrimination against "a *qualified* individual on the basis of disability" (emphasis added)). In this case, Adair cannot show that he was qualified for the position of firefighter.

The ADAAA provides that a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). In considering whether a person is able to perform the "essential functions" of the job, the

17

ADAAA commands that "consideration shall be given to the employer's judgment as to what functions of a job are essential." *Id.* In addition, the statute explains that where "an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.*

To determine whether a plaintiff is a qualified individual such that he can bring a disability-discrimination claim, "[o]ur ADAAA roadmap is clearly articulated" as "a two-part analysis." *Hawkins*, 778 F.3d at 887 (citations and quotation marks omitted). First, we ask "whether the plaintiff can perform the essential functions of the job, *i.e.,* functions that bear more than a marginal relationship to the job at issue." *Id.* (alterations and quotation marks omitted). And second, "if we conclude that Plaintiff is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions." *Id.* at 887–88 (alterations and quotation marks omitted).

  a.  <u>Whether Adair Can Perform the Essential Functions of a Firefighter</u>

In any disability-discrimination claim, the plaintiff must show that he is able to perform the essential functions of his job. *See id.* at 884 ("We have consequently said that under the ADAAA, a plaintiff is a qualified individual as long as he can perform a job offered by the employer that he desires." (alterations and quotation marks omitted)). The ADAAA's implementing regulations, promulgated by the EEOC, provide that "[t]he term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1) (2015). "[O]ur

18

disability-discrimination caselaw explicitly incorporates the EEOC's regulations and counsels in favor of deference to an employer's judgment concerning essential functions." *Hawkins*, 778 F.3d at 884–85 (citations and footnote omitted). To determine whether a particular function is essential, we consider, among other things, (1) the employer's judgment as to which functions are essential; (2) written job descriptions; (3) the time spent performing the particular function; (4) the consequences if the individual cannot perform the function; (5) any collective-bargaining agreement; (6) the work experience of those in the position in the past; and (7) the current work experience of those in similar positions. 29 C.F.R. § 1630.2(n)(3).

Thus, "the employer describes the job and functions required to perform that job," and we defer to the employer's description. *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004). As we have explained, "the essential function 'inquiry is not intended to second guess the employer or to require the employer to lower company standards.'" *Id.* (quoting *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir. 2001)). Indeed, "[w]e will not second guess the employer's judgment when its description is job-related, uniformly enforced, and consistent with business necessity." *Id.* In disability-discrimination cases, it is not our job as a court to "sit as a super personnel department that second guesses employers' business judgments." *Id.* at 1122 (quotation marks omitted). "But the employer's judgment is not conclusive evidence." *EEOC v. Picture People, Inc.*, 684 F.3d 981, 997 (10th Cir. 2012). As we have explained,

19

despite our usual deference to an employer's adoption of qualifications based on its judgment and experience, we have firmly held that "an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description."

*Hawkins*, 778 F.3d at 889 (quoting *Picture People*, 684 F.3d at 997). Still, "[w]e weigh *heavily* the employer's judgment regarding whether a job function is essential." *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1262 (10th Cir. 2009) (emphasis added).

Here, Adair contends that he is qualified for the position he seeks because he can perform the physical requirements of his job as the HazMat Director—indeed, he asserts that he "is (and was) capable of doing his job for Defendant." Appellant's Opening Br. at 13 (emphasis in original). Adair argues that the district court considered him unqualified for the position only because of the Department's improper no-restrictions policy. But Adair asserts that the no-restrictions policy was an improper qualification standard and that "the ADA requires that physical requirements for the job, rather than lack of medical impairments, be the legal test." *Id.* Adair does not contend that he sought accommodations for his lifting restrictions, but argues only that the Department applied an illegal standard to determine whether he was qualified for the position.

As previously discussed, the Oklahoma Administrative Code has outlined the essential functions of a firefighter and incorporates a lifting requirement into that description. In its "[d]escription of essential functions of all eligible firefighters," the Oklahoma Administrative Code provides that all firefighters must be able to "search[], find[], and rescue-drag[] or carry[] victims ranging from newborns up to

20

*adults weighing over 200 lb* to safety despite hazardous conditions and low visibility." Okla. Admin. Code § 270:10-1-7(6) (emphasis added). Adair focused his argument on the Oklahoma Administrative Code's performance-and-agility test, which requires that firefighters "given a weight of 125 lb. (57 kg.)[,] shall lift the weight from the floor and carry the weight 100 ft. . . . without stopping." *Id.* § 270:10-1-6(c)(5). But he fails to discuss his ability to rescue-drag or carry victims weighing up to 200 pounds to safety, which Oklahoma has determined is an essential function for all of its firefighters. The functional-capacity evaluation determined that Adair's maximal lifting capacity was capped at only 105 pounds occasionally and 90 pounds frequently. Obviously, that's less than what Oklahoma requires for its firefighters.

Adair argues that the Department also added into the Oklahoma Administrative Code a no-restrictions policy for firefighters in the City. Specifically, Adair testified that the Department had a policy that "ha[d] been talked about at the fire department for years" that firefighters could not have any "lifting restrictions." Appellant's App. at 51. His "understanding" was that "in order to work as a fireman, you have to have unlimited restrictions and you need to be able to lift any amount of weight." *Id.* Adair argues that this no-restrictions policy is an improper qualification standard. But the City hasn't here required someone to lift an unreasonable amount of weight, and Adair offers no evidence that the policy was applied solely to him or imposed for a discriminatory purpose. In fact, Adair even testified that he was unsurprised that the City enforced the policy against him after he shared the results of his functional-capacity evaluation with

21

the Fire Chief. Nothing suggests that the City has enforced the no-restrictions requirement unreasonably or not applied it consistently across the Department. *See Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003) ("Provided that any necessary job specification is job-related, uniformly enforced, and consistent with business necessity, the employer has a right to establish what a job is and what is required to perform it.").

Importantly, the risks involved in firefighting "strike at the heart of another factor used to determine whether a job function is essential: the consequences of not requiring an employee to perform the function." *Hennagir*, 587 F.3d at 1263. Here, common sense should prevail. If a firefighter can lift only 105 pounds occasionally and 90 pounds frequently, the City would substantially risk that firefighter's being unable to rescue someone or severely injuring himself during a fire. Indeed, the federal regulations even mention the dire consequences of a firefighter being unable to perform essential functions of the job: "[A]lthough a firefighter may not regularly have to carry an unconscious adult out of a burning building, the consequence of failing to require the firefighter to be able to perform this function would be serious." 29 C.F.R. app. § 1630.

Still, Adair asserts that he was qualified for his job as HazMat Director because during his four years in that job, he had "never performed firefighting or other firefighter duties, other than being director of the [HazMat] operation." Appellant's Opening Br. at 3. But that leaves unchanged the state's requirements applying to *all* firefighters. Moreover, Adair acknowledged to his doctors that "*his job duties as a firefighter* for the City . . . are to: walk, run, lift, push, pull, bend,

22

carry, climb and squat." Appellant's App. at 60 (emphasis added). Regardless of a specialized title within a specific fire department, all Oklahoma firefighters "must meet minimum medical requirements . . . to perform the essential functions of fire suppression, prevention and life safety." Okla. Admin. Code § 270:10-1-7. And all three doctors' reports stated that Adair could not perform these duties: Dr. Rodgers concluded that Adair "is at risk to go back to work in any position that requires him to bend, stoop, or lift 75 to 125 pounds," Appellant's App. at 74; Dr. Baker opined that Adair "cannot perform the duties of a firefighter, limited by his back pain with minimal exertion/movement," *id.* at 76; and Dr. Hicks concluded that Adair "has permanent restrictions" and "[d]ue to pain he cannot perform the duties of a firefighter safely," *id.* at 98.

Given his back injury and the doctors' findings, Adair no longer has an ability to perform the state-mandated essential functions of a firefighter. As we have said in the past, "[w]e are reluctant to allow employees to define the essential functions of their positions based solely on their personal viewpoint and experience." *Mason*, 357 F.3d at 1122. Adair offers nothing but his personal experience to argue that his role does not require him to lift heavy objects. That's not enough. Though Adair may not regularly fight fires as HazMat Director, he is still a firefighter and can be called to the scene to respond to a fire with hazardous materials. We addressed a similar circumstance in *Frazier v. Simmons*, 254 F.3d 1247 (10th Cir. 2001). In *Frazier*, a crime-scene investigator challenged the district court's conclusion that his job's essential functions included being able to run, carry a firearm, and physically restrain offenders. *Frazier*,

23

254 F.3d at 1250–51. We agreed with the district court that these were essential functions, regardless of how infrequently a crime-scene investigator may have to do them. We explained that even "assuming that an investigator may be required to perform these physical activities infrequently, the potential for physical confrontation with a suspect exists any time [the plaintiff] conducts a crime scene investigation." *Id.* at 1260; *see Martin v. Kansas*, 190 F.3d 1120, 1132 (10th Cir. 1999) (recognizing "the potentially dire consequences" of not requiring a corrections officer to be able to run, restrain violent offenders, or respond to emergencies), *overruled on other grounds by Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001), *as recognized in Starkey ex rel. A.B. v. Boulder Cty. Soc. Servs.*, 569 F.3d 1244, 1259–60 (10th Cir. 2009).

Similarly, in *Cremeens v. City of Montgomery*, 427 F. App'x 855 (11th Cir. 2011) (per curiam) (unpublished), a Fire Investigator challenged a district court's determination that fire suppression was an essential function of his role as a Fire Investigator. Analogously to *Frazier*, the Eleventh Circuit rejected the plaintiff's argument. As that court explained,

> Fire Investigators may engage in fire suppression activities infrequently, but that does not mean firefighting is a nonessential function of the position. Indeed, the firefighting function is essential whenever the need arises, and the consequences of not requiring a Fire Investigator to engage in fire suppression activities when necessary could be dire.

*Cremeens*, 427 F. App'x at 858. The Fifth Circuit has also addressed a similar situation with an injured firefighter and held that "given the physical demands of being a firefighter, and the fact that [the plaintiff's] treating physician indicated that he could never be released to perform those duties again, there is no question that [the plaintiff]

24

does not meet the first prong" that requires him to be able to perform the essential functions of a firefighter. *Burch v. City of Nacogdoches*, 174 F.3d 615, 619–20 (5th Cir. 1999).

Thus, we follow *Frazier* and our sister circuits' lead, rejecting Adair's argument that he is not a firefighter and is not required to suppress fires as the HazMat Director. The Department, the City, and the State of Oklahoma have weighed the risks of a firefighter's inability to respond when necessary and decided that fire rescue is an essential function for all firefighters, even for those with specialized roles. We will not second guess their decision. Accordingly, we conclude that Adair cannot satisfy the essential functions of his role as a firefighter.

b. Whether the City Could Reasonably Accommodate Adair

Having concluded that Adair is unable to perform the essential functions of a firefighter, we next ask whether the City could reasonably accommodate Adair as a firefighter with his lifting restrictions. The burden is on Adair to show the existence of a reasonable accommodation. *Mason*, 357 F.3d at 1122 ("To defeat an employer's motion for summary judgment, the employee must first demonstrate that an accommodation appears reasonable on its face."). Here, Adair has failed to show a reasonable accommodation that the City could make.

Where a plaintiff is unable to perform the essential functions of his job, the plaintiff must show that the employer could accommodate his disability and that such an accommodation would be reasonable. *Id.* The ADAAA provides that a "'reasonable accommodation' may include":

25

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). If the plaintiff demonstrates a reasonable accommodation, "[t]he burden of production . . . shifts to the employer to present evidence of its inability to accommodate." *Mason*, 357 F.3d at 1122. Where the employer satisfies that burden, the burden then shifts back to the plaintiff to proffer "evidence concerning h[is] individual capabilities and suggestions for possible accommodations to rebut the employer's evidence." *Id.*

Here, Adair does not suggest any accommodations that the City could have made to retain him as a firefighter. Rather, he asserts that he should be able to continue in his role as HazMat Director because he sees himself as "capable of doing his job for Defendant." Appellant's Opening Br. at 13. As discussed above, we disagree. Regardless of his specialized title, Adair is still a firefighter and seeks to be retained as such. Instead of asking for an accommodation for his lifting restrictions, Adair is essentially asking us to force the City to retain a firefighter who cannot perform essential functions of that job that have been uniformly imposed on every other firefighter in the state. That's not reasonable. "We have consistently held . . . that an employee's request to be relieved from an essential function of h[is] position is not, as a matter of law, a reasonable or even plausible accommodation." *Mason*, 357 F.3d at 1122; *see Frazier*, 254 F.3d at 1261

26

("Although job restructuring is a possible accommodation under the Disabilities Act, '[a]n accommodation that eliminates the essential function of the job is not reasonable.'" (quoting *Smith v. Blue Cross Blue Shield of Kan., Inc.*, 102 F.3d 1075, 1076 (10th Cir. 1996))). Simply put, an employer need not "modify an essential function of an existing position in order to accommodate a disabled employee." *Mason*, 357 F.3d at 1123.

Aside from asserting that he is capable of performing purely as HazMat Director, Adair also has not identified any possibility of reassignment to a vacant, nonfirefighting position within the Department. *See Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 234 (3d Cir. 2000) (holding that "in a failure-to-transfer case, if, after a full opportunity for discovery, the summary judgment record is insufficient to establish the existence of an appropriate position into which the plaintiff could have been transferred, summary judgment must be granted in favor of the defendant—even if it also appears that the defendant failed to engage in good faith in the interactive process"). Indeed, Adair testified that he did not know of "any other places that [he] could have worked within the fire department with [his] lifting restriction," "except [his] job" as HazMat Director. Appellant's App. at 173.

Thus, because Adair is unable to perform the essential functions of a firefighter and has not shown that the City could reasonably accommodate him, Adair's disability-discrimination claim fails as a matter of law. Regardless of whether the City regarded Adair as having an impairment, Adair cannot maintain a disability-discrimination claim under the ADAAA if he is not a qualified individual. Adair therefore failed to establish a prima facie case of disability discrimination under the ADAAA, and the district court

27

correctly granted summary judgment to the City on Adair's disability-discrimination claim.

## C.    Adair's Medical-Examination Claim

Next, Adair argues that the City violated the ADA by forcing him to complete the functional-capacity evaluation, which he contends was "an improper medical examination." Appellant's Opening Br. at 15. Adair argues that the City violated 42 U.S.C. § 12112(d)(4) because the evaluation was involuntary, not job-related, and not a business necessity. The City responds that "[t]here is no dispute that the testing Plaintiff refers to was in conjunction with his workers' compensation claim, so it was necessary by definition, and the Trial Court properly agreed." Appellee's Resp. Br. at 19. The City is correct.

Like the definition of a qualified individual, the ADAAA did not change the nature of the ADA's prohibition against forced medical examinations. *Compare* ADAAA, § 4, *with* 42 U.S.C. § 12112 (d)(2)–(4). The ADAAA covers medical examinations in three instances: (1) pre-employment, (2) post-offer of employment, and (3) during the employment relationship. 42 U.S.C. § 12112(d)(2)–(4). Here, we are concerned only with examinations during the employment relationship.

During the employment relationship, the ADAAA "*permit[s]* employers to conduct certain medical inquiries and examinations." *C.R. Eng., Inc.*, 644 F.3d at 1046 (emphasis in original). Specifically, the ADAAA provides that an employer (1) "may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site";

28

and (2) "may make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). But an employer:

> shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

*Id.* § 12112(d)(4)(A).

As the Second Circuit has noted, "[r]elatively little case law concerns the proper interpretation of business necessity in this context." *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 97 (2d Cir. 2003). But the EEOC has interpreted the ADAAA as permitting an employer to "make inquiries into the ability of an employee to perform job-related functions." 29 C.F.R. § 1630.14(c). Summarizing existing precedent on the subject, the Second Circuit has explained that "courts will readily find a business necessity if an employer can demonstrate that a medical examination or inquiry is necessary to determine . . . whether the employee can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties." *Conroy*, 333 F.3d at 98; *see Conrad v. Bd. of Johnson Cty. Comm'rs*, 237 F. Supp. 2d 1204, 1230 (D. Kan. 2002) (explaining that "[a]n employer's request that an employee undergo a medical examination must be supported by evidence that would 'cause a reasonable person to inquire as to whether an employee is still capable of performing his job'" (alteration omitted) (quoting *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir. 1999))).

Here, Adair—not the City—put his ability to perform his job at issue. The City did not seek out the functional-capacity evaluation; it was a part of Adair's workers' compensation claim. The evaluation and any later medical examinations took place only because Adair was seeking workers' compensation benefits. Adair does not argue this point. Rather, Adair argues that the evaluation was neither job-related nor consistent with business necessity since the evaluation did not measure the specific quantifications outlined in the Oklahoma Administrative Code. But where, as here, an employee has sought workers' compensation benefits based on a potential permanent or temporary physical impairment, an employer has a valid business interest in determining whether the employee is actually able to perform the essential functions of his job. We fail to see how the evaluation's inquiry into Adair's lifting capabilities and general physical fitness, which we have already determined measure essential functions of his job, could be anything but job-related and consistent with business necessity. Adair has not presented evidence rebutting the City's argument that the evaluation was directly related to his workers' compensation claim and a measure of his ability to perform the essential functions of his job.

In short, the functional-capacity evaluation was both job-related and consistent with business necessity. Accordingly, Adair has failed to establish that the evaluation violated 42 U.S.C. § 12112(d)(4). The district court properly granted summary judgment to the City on this claim.

30

**D.     Adair's Retaliatory-Discharge Claim**

Adair next contends that the district court erred in granting summary judgment to the City on his retaliatory-discharge claim. Adair argues that the district court failed to consider his proffered evidence that his workers' compensation award was the impetus for his termination, and therefore, that the district court erred in its causation analysis. The City responds that the district court properly granted summary judgment for three reasons: (1) temporal proximity alone is insufficient; (2) a non-retaliatory reason exists to justify Adair's termination, and Adair offered insufficient evidence to show the non-retaliatory reason was pretext; and (3) Adair was unqualified to continue employment as a firefighter.[3] Again, we agree with the City.

*1.     Oklahoma's Retaliatory-Discharge Law*

As a threshold matter, we conclude that Adair was not discharged but chose to retire. But where an employee can show that he was faced with a choice of resigning or being fired, Oklahoma allows a claim of constructive discharge. *See Buchanan v. Sherrill*, 51 F.3d 227, 229 (10th Cir. 1995) ("Constructive discharge is now a

---

[3] Alternatively, the City argues that Adair should be precluded from bringing his retaliatory-discharge claim based on equitable estoppel and waiver. The City also argues failure of causation as a matter of law. We find it unnecessary to discuss these arguments because we affirm the district court's decision on other grounds. *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007) ("[W]e may 'affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.'") (quoting *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994)).

recognized cause of action in Oklahoma, at least when the plaintiff's employment has terminated.").

Adair filed his retaliatory-discharge claim under Oklahoma law. The Oklahoma Workers' Compensation Act prohibits an employer from terminating an employee for initiating a workers' compensation claim. Okla. Stat. tit. 85, § 341(A). But it also provides that "[a]fter an employee's period of temporary total disability has ended, no employer shall be required to rehire or retain any employee who is determined to be physically unable to perform assigned duties." *Id.* § 341(C). If an employer discharges such an employee, the employer's decision "shall not be deemed a violation of this section." *Id.*

Like federal courts, Oklahoma has adopted a burden-shifting framework for retaliatory-discharge claims. *See Buckner v. Gen. Motors Corp.*, 760 P.2d 803, 806–07 (Okla. 1988). First, "[a] plaintiff must make a *prima facie* case of retaliatory discharge by providing evidence that shows that filing of a claim . . . was a significant factor in the employee's termination from employment." *Wilson v. Hess-Sweitzer & Brant, Inc.*, 864 P.2d 1279, 1284 (Okla. 1993). To establish a prima facie case, the employee must show "1) employment; 2) a job related injury; 3) medical treatment so that the employer is put on notice or a good faith start of Workers' compensation proceedings[; and] 4) *consequent* termination." *Wallace v. Halliburton Co.*, 850 P.2d 1056, 1059 (Okla. 1993) (emphasis in original). According to the Oklahoma Supreme Court, "whether there was a *consequent* termination is dependent upon the employee producing evidence as would give rise to a legal inference [that]

the discharge was significantly motivated by retaliation for the employee exercising statutory rights." *Id.* (emphasis in original).

Once a plaintiff establishes a prima facie case of discrimination, "the burden then appropriately shifts to the employer to rebut the inference that its motives were retaliatory by articulating that the discharge was for a legitimate non-retaliatory reason." *Buckner*, 760 P.2d at 806. A non-retaliatory reason may be "the employee's inability to perform the assigned duties, or the bad faith pursuit of a compensation claim." *Id.* at 806–07. "If the employer carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Id.* at 807.

When the burden shifts back to the plaintiff, the burden "merges with the [plaintiff's] ultimate burden of persuading the court that []he has been the victim of retaliatory discharge." *Id.* The employee may satisfy his ultimate burden "either directly by persuading the court that the discharge was significantly motivated by retaliation for h[is] exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* The Oklahoma Supreme Court has further explained that although an employee need not meet a "but for" standard, "the evidence must do more than show that the filing of the claim was only one of many possible factors resulting in his discharge." *Wallace*, 850 P.2d at 1059.

## 2. *Adair Cannot Rebut the City's Non-Retaliatory Reason for Discharge*

In this case, Adair relies on the timing of his termination and the grant of his workers' compensation award to show that the City retaliated against him. As Adair points out, the functional-capacity evaluation indicated that Adair had a lifting restriction in fall 2012, but he was not terminated until March 2014, which was the month that he received his workers' compensation award. Adair testified that on March 17, 2014, the Fire Chief "had the workers' comp award in his hand and told [Adair] that the workers' comp had said [Adair] had permanent restrictions on their workers' comp award, so [the Chief] was terminating [Adair's] employment as of 5:00 on March the 21st, 2014." Appellant's App. at 173. Adair further testified that the Fire Chief told him that Adair "had to get the lifting restrictions removed" and gave him a choice of being fired or retiring. *Id.* Based on this timing, Adair argues that "a jury could find that the motivation of Defendant was the workers' compensation award and that the termination was in retaliation therefor." Appellant's Opening Br. at 21.

But as the City points out, temporal proximity is not enough. To establish a prima facie case of discrimination, a plaintiff has to offer something more. *See Wallace*, 850 P.2d at 1059 ("[T]iming *may* be evidence of a retaliatory discharge. . . . However, timing does not by itself give rise to the level of evidence required to establish a prima facie case." (emphasis in original)). Adair argues that the "something more" is the Fire Chief's mentioning the award, which, Adair says, was the "impetus" for his termination. But Adair doesn't offer evidence that the City

34

terminated him because of the award itself. Contrary to Adair's assertion, the City's Human Resources Manager did not testify that the award itself was the impetus for his termination—she testified that the City relied on the Oklahoma Workers' Compensation Court's finding of "permanent disability" in concluding that Adair could no longer serve as a firefighter. Appellant's App. at 194. Regardless, we will assume that Adair satisfied his burden of showing "a *consequent* termination" by "producing evidence as would give rise to a legal inference [that] the discharge was significantly motivated by retaliation for the employee exercising statutory rights." *Wallace*, 850 P.2d at 1059 (emphasis in original). Assuming Adair presented a prima facie case of retaliatory-discharge, we next ask whether the City offered a non-discriminatory reason for his termination and, if so, whether Adair has showed that the City's non-retaliatory reason is pretext.

As previously discussed, the City has offered ample evidence that Adair was physically unable to perform his duties as a firefighter given his lifting restrictions. Indeed, his own doctors concluded that he could not perform the duties of a firefighter. Adair's inability to perform a firefighter's duties constitutes a legitimate, non-retaliatory reason for his termination. *See Buckner*, 760 P.2d at 806–07 (offering "the employee's inability to perform the assigned duties" as an example of a non-retaliatory reason for discharge); *Keddington v. City of Bartlesville*, 42 P.3d 293, 298 (Okla. Civ. App. 2001) (holding that "once the employee's [temporary-total-disability] period has ended, and the employee is determined to suffer some permanent physical disability which prevents the discharge of assigned duties for the

employer, the employer bears no § [341] liability for then terminating the employee under [§ 341(C)].”). Thus, the City satisfied its burden.

At this point, the burden shifts back to Adair to show that the City's non-retaliatory reason was pretext. Rather than arguing that the City's reason was pretext, Adair argues that he was discharged based on an improper qualification standard, namely, the Department's no-restrictions policy. But we have already determined that Adair could not meet the physical requirements of a firefighter in Oklahoma. No matter the specific role or job title that Adair had at the fire station, he was still a firefighter, and the State, City, and Department had physical-fitness standards that firefighters have to meet. Adair has failed to show that he could meet those standards.

Thus, Adair cannot show that his discharge was “significantly motivated” by the workers' compensation award or that the City's terminating Adair for his failure to meet the physical-fitness standard for firefighters is “unworthy of credence.” *Buckner*, 760 P.2d at 807. The City paid Adair during his two years of leave, even though he wasn't working, until the City could be sure that Adair wouldn't be able to perform his duties as a firefighter. The Oklahoma Workers' Compensation Court made that determination, and only then did the City know that Adair could not return to the Department as a firefighter. Accordingly, the district court properly granted summary judgment to the City on Adair's retaliatory-discharge claim.

E.     **Initial Disclosures**

Finally, Adair argues that the district court improperly required Adair to compute the damages he sought for pain and suffering and emotional distress in

36

Adair's initial disclosures. Because we affirm the district court's grant of summary judgment to the City on all of Adair's claims, we need not address this issue. The computation of damages in the initial disclosures has no bearing on the summary-judgment order.

## CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment for the City on all of Adair's claims.