**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 10, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ISAAC M. HENSON,

    Plaintiff - Appellant,

v.

AMERIGAS PROPANE, INC.,

    Defendant - Appellee.

No. 16-7057
(D.C. No. 6:15-CV-00163-RAW)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

Isaac M. Henson sued his former employer, Amerigas Propane, Inc., for

discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C.

§§ 12101-12213, and wrongful discharge in violation of the Oklahoma Workers'

Compensation Act (OWCA), Okla. Stat. tit. 85, § 341 (2011), *repealed by* 2013 Okla.

Sess. Laws 208, § 171 (current version at Okla. Stat. tit. 85A, § 7).  The district court

granted summary judgment in favor of Amerigas.  Because we agree that Henson

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

failed to show Amerigas's explanation for firing him was a pretext for unlawful discrimination and retaliation, we affirm.

## I.    Background

Henson began working as a delivery driver for Amerigas in May 2011. His responsibilities included filling and delivering propane tanks to commercial and residential customers. While executing those tasks in August 2012, he injured the middle finger of his right hand. Amerigas tried to accommodate him by assigning light work duties as needed. Even so, Henson had over sixty medical and occupational-therapy appointments after his injury and underwent hand surgery in April 2013. That September, he advised Amerigas that his doctors recommended a second hand surgery, which was likely to lead to additional work-related restrictions.

Meanwhile, Henson's work performance deteriorated. His initial performance appraisal was generally positive, with Amerigas commending him for his work ethic and for being a team player and even giving him a two-percent merit pay increase. But repeated safety violations soon marred his overall work record. Henson's delivery truck was equipped with a "DriveCam" system that captures twelve seconds of audio and video when triggered by certain safety-related events. DriveCam recorded three incidents of cornering too fast (in September 2011, December 2011, and November 2012) and one incident of running a stop sign (in October 2012). Ultimately, Henson received a formal written warning for these safety violations in an employee disciplinary report dated November 2012. Safety was not the only concern. In April 2013, Henson received a second formal written warning and a four-day suspension for insubordination, a negative

2

attitude, and customer service deficiencies. His May 2013 performance appraisal reiterated Amerigas's concerns about his driving safety and advised him to "work to direct his anger away from fellow employees and be more positive toward the company." Aplt. App., vol. I at 204-05.

The decline of the parties' relationship culminated in Henson's termination in October 2013. To justify its decision, Amerigas cited another safety violation: leaving the gauge open on a customer's propane tank. It also cited "[i]nsubordination and [a]ttitude," *id.* at 224, and detailed seven problematic encounters with customers and coworkers between August and October 2013. However, Henson was certain he was fired because of his injury and resulting disability, the imminence of his second hand surgery, and his filing of a workers' compensation claim.

Unhappy with his termination, Henson filed a complaint with the Equal Employment Opportunity Commission and the Oklahoma Employment Security Commission. After exhausting his administrative remedies and securing a right-to-sue letter, he filed this lawsuit asserting: (1) Amerigas violated the ADA when it fired him because of his hand impairment; and (2) Amerigas violated the OWCA when it fired him in retaliation for engaging in statutorily protected activity. Amerigas moved for summary judgment. The district court applied the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), to both claims.[1] It

---

[1] It is undisputed that this framework applies to Henson's claims under both the ADA and the OWCA. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (ADA claims); *Adair v. City of Muskogee*, 823 F.3d 1297, 1314 (10th Cir. 2016) (OWCA retaliatory-discharge claims).

found that Henson established a prima facie claim of discrimination under both the ADA and the OWCA. But it also found that Amerigas established a legitimate, nondiscriminatory reason for terminating Henson, so the burden shifted to Henson to present evidence from which a reasonable fact finder could conclude the proffered reason was a pretext. Even viewing the record in the light most favorable to Henson, the court held that he did not establish a genuine issue of material fact on pretext to support either claim. Henson filed this timely appeal.

## II.    Discussion

We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). But if the movant will not bear the burden of persuasion at trial, it can meet this initial burden "simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. It "need not negate the nonmovant's claim." *Id.*

The sole issue on appeal is whether Henson presented sufficient evidence to show pretext. To carry his burden for the ADA claim, Henson must show that the proffered reasons for his termination "were so incoherent, weak, inconsistent, or contradictory that

4

a rational factfinder could conclude the reasons were unworthy of belief." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (internal quotation marks omitted). Similarly, for the OWCA claim, he must show that the proffered explanation is "unworthy of credence." *Adair v. City of Muskogee*, 823 F.3d 1297, 1314 (10th Cir. 2016) (internal quotation marks omitted).

Henson makes the same pretext arguments for both claims. First, he points out the temporal proximity of the confirmation of his need for a second surgery in September 2013 and his termination in October 2013. Second, he attacks the veracity of the individual infractions identified in the employee disciplinary reports and characterizes some of the safety violations as "trivial." Aplt. Br. at 40. He addresses those infractions one by one, recounting his version of the events and explaining why his behavior was not problematic or may have been misinterpreted. Finally, and more generally, he cites Amerigas's failure to adequately investigate the open-valve complaint, its shifting reasons for terminating him, and its vacillation as to which supervisor actually decided to fire him as additional proof of pretext.

Having thoroughly reviewed the parties' briefs, the record, and the applicable law, we affirm for substantially the same reasons articulated in the district court's thorough and well-reasoned order dated June 7, 2016.

We add that any suspiciousness in the timing of Amerigas's termination decision is eclipsed by Henson's checkered performance history, which dates back to his first DashCam incident in September 2011 and his first written warning in November 2012. Moreover, Amerigas was aware of the hand injury and its impact on Henson's ability to

5

perform his duties long before the purported triggering event—i.e., the need for a second surgery.  Henson notified his supervisor shortly after he was hurt, he attended over sixty appointments in his quest to treat his injury, and he was placed on light duty after he underwent the first surgery.

We also note that Henson's self-assessment of his performance is not enough to show pretext.  On appeal, Henson systematically disputes each of the negative incidents on his employee disciplinary reports.  But "[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996); *see, e.g.*, *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1292-93 (10th Cir. 2013) (upholding no-pretext finding where employer believed other employees' accounts of the plaintiff's behavior); *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1179 (10th Cir. 2006) (finding that employee's subjective beliefs regarding her attitude, knowledge, and performance did not raise a genuine issue of material fact regarding employer's stated bases for her termination).  "[O]ur role isn't to ask whether the employer's decision was wise, fair or correct, but whether it honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs." *DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (alterations and internal quotation marks omitted).  Henson's conclusory statements are not enough to call the latter into question.

### III.     Conclusion

Because Henson did not present sufficient evidence to show pretext, summary judgment was appropriate on his ADA and OWCA claims.  We affirm the judgment of the district court.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge