# United States Court of Appeals
## For the First Circuit

No. 15-1327

ESTHER MERCADO,

Plaintiff, Appellant,

v.

COMMONWEALTH OF PUERTO RICO; SUPREME COURT OF PUERTO RICO;
OFICINA DE ADMINISTRACIÓN DE TRIBUNALES; and ADMINISTRACIÓN DE
SERVICIOS DE SALUD MENTAL Y CONTRA LA ADDICIÓN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Lipez, Hawkins,* and Barron,
Circuit Judges.

Juan H. Saavedra Castro for appellant.
Rosa Elena Pérez-Agosto, Assistant Solicitor General, with
whom Margarita Mercado-Echegaray, Solicitor General, was on brief,
for appellees Commonwealth of Puerto Rico, Supreme Court of Puerto
Rico, and Oficina de Administración de Tribunales.
Michael Craig McCall, with whom Luis Pabón Roca and Clarisa
Sola Gómez were on brief, for appellee Administración de Servicios
de Salud Mental y Contra La Addición.

---

* Of the Ninth Circuit, sitting by designation.

February 29, 2016

**BARRON**, **Circuit Judge**.  Esther Mercado sued the Commonwealth of Puerto Rico and three other Puerto Rico governmental entities under Title II of the Americans with Disabilities Act ("ADA").  She alleged that they had denied her access to public services and discriminated against her because she was "regarded as" having a physical or mental impairment within the meaning of the ADA.  42 U.S.C. §§ 12102, 12132.  The only question that we must decide is whether Mercado brought her suit too late.  And the answer to that question turns on whether the limitations period set forth in 28 U.S.C. § 1658 applies to her case.

That provision establishes a four-year, "catch-all" limitations period for statutes that, like the ADA, do not set forth their own limitations period.  But the catch-all period applies only to actions "arising under" a federal statute enacted after December 1, 1990, the date on which § 1658 became law.  The parties agree that if that four-year, catch-all limitations period does apply here, then Mercado's suit was timely filed.  Otherwise, Mercado concedes that Puerto Rico law would supply the limitations period, that the applicable period under Puerto Rico law would only be one year, and that her suit would have been filed too late.

The District Court concluded that Mercado's "regarded as" claims did not "aris[e] under" a federal statute enacted after December 1, 1990, because the ADA was passed prior to that date.

- 3 -

Thus, the District Court applied the one-year Puerto Rico statute of limitations and dismissed her suit as time-barred. We conclude, however, that § 1658's limitations period does apply here because Mercado's legal claims were made possible by the 2008 amendments to the ADA codified in the ADA Amendments Act of 2008 ("the ADAAA"). We thus reverse the District Court's order of dismissal.

## I.

Mercado initially filed her complaint in federal court on August 14, 2013, before filing an amended complaint on March 1, 2014. [Dkt Nos. 1, 18]. The amended complaint (which we will refer to as "the complaint" from here on out) names the Commonwealth of Puerto Rico, the Supreme Court of Puerto Rico, the "Oficina de Administración de Tribunales," and the "Administración de Servicios de Salud Mental y Contra la Addición" as defendants. [Dkt. No. 18].

The complaint alleges that the defendants subjected Mercado to involuntary institutional confinement by ordering her committed to a psychiatric hospital without giving her an opportunity to be heard. [Am. Compl. ¶¶ 4.1-4.4, 5.7]. The complaint further alleges the defendants violated Title II of the ADA because, in so confining her, they discriminated against her and denied public services to her "by reason of her disability." [Am. Compl. ¶¶ 5.5, 5.7, 5.9, 6.3].

- 4 -

The complaint sets out what it identifies as three separate causes of action. The first two are for damages based on discrimination or denial of public services under Title II of the ADA. [Am. Compl. ¶¶ 5.1-5.11, 6.1-6.3].[1] The last is for an injunction ordering Puerto Rico to devise a system guaranteeing counsel, as well as notice and the right to be heard, to any disabled person who faces involuntary confinement in a psychiatric hospital. [Am. Compl. ¶¶ 7.1-7.6].

The complaint does not allege that Mercado had a "disability" in the sense that she had what the ADA refers to as an "impairment." See 42 U.S.C. §§ 12102(1)(A). Nor does the complaint allege that she was discriminated against because she had such an impairment. Instead, the complaint alleges that the defendants discriminated against Mercado "by reason of" the fact that she was "regarded as" having a physical or mental impairment within the meaning of the ADA. See id. §§ 12102(1)(C), 12132.[2]

In pleading "regarded as" discrimination claims under the ADA, the complaint alleges that Mercado had a "disability"

---

[1] The complaint also recites, within the two causes of action for damages, violations of the Fourteenth Amendment's Due Process Clause. But Mercado has not challenged the District Court's dismissal of her Fourteenth Amendment claims, and so we will not address that dismissal.

[2] The parties do not separately address this request for injunctive relief in their arguments to us. We thus treat this request as pleading "regarded as" discrimination, just like the other two "causes of action" identified in the complaint.

within the meaning of the ADA "[b]y virtue of the [ADA] Amendments Act of 2008, and changes in definition of the term 'disability' . . . because defendants regarded [her] as having a major 'mental impairment.'" [Am. Compl. ¶¶ 4.19, 5.6]. The 2008 amendments altered the ADA by, among other things, stating that

> [a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

ADA Amendments Act of 2008, Pub. L. No. 110-325, sec. 4(a), § 3(3)(A), 122 Stat. 3553, 3555 (codified at 42 U.S.C. § 12102(3)(A)).

The defendants moved to dismiss the complaint. They argued that a one-year statute of limitations applied to Mercado's claims under Puerto Rico law and that she had not filed within that period. [Dkts. No. 29, 30]. Mercado opposed the motion. She did so solely on the ground that her claims' dependence on the 2008 amendments to the ADA made the four-year, "catch-all" period in § 1658, rather than the one-year limitations period under Puerto Rico law, applicable to her suit. [Dkt. No. 40 (citing Jones, 541 U.S. at 382)].

The District Court rejected Mercado's argument. The District Court concluded that her claims "would have been actionable under the original provisions of the ADA," Mercado v.

- 6 -

Puerto Rico, 86 F. Supp. 3d 46, 49 (D.P.R. 2015), and thus that § 1658's limitations period did not apply. Because the District Court agreed with the defendants that, under Puerto Rico law, a one-year statute of limitations applied to Mercado's claims and that she had not complied with it, the District Court dismissed her complaint as time-barred. Id. at 49-50.

On appeal, Mercado does not contest the District Court's ruling that the one-year Puerto Rico statute of limitations would apply to her suit if the four-year period established by § 1658 does not apply in its stead. Nor does she contest that her suit was not filed within that one-year time period. Rather, she challenges only the District Court's determination that § 1658's four-year limitations period does not apply. And so that is the only issue that we address.

## II.

The question that we must decide is one of statutory interpretation, for which our review is de novo. Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., 134 S. Ct. 1744, 1748 (2014). But the question is not one that we answer on a blank slate. Rather, in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004), the Supreme Court interpreted the meaning of the key phrase in § 1658: "a civil action arising under an Act of Congress." We thus begin by describing Jones in more detail. We then explain

- 7 -

why, in light of Jones, we conclude that the four-year limitations period set forth in § 1658 applies to Mercado's claims.

**A.**

In Jones, the Court explained that many federal statutes do not set forth their own limitations period and that, in response, courts had developed the "settled practice" of borrowing state statutes of limitations to fill the "void." Id. at 377.[3] Jones recognized, however, that this practice had "generated a host of issues that required resolution on a statute-by-statute basis" and, as a result, had "spawned a vast amount of litigation." Id. at 377-78. For example, Jones noted that in the course of undertaking such gap filling, courts had confronted a range of difficult issues. Courts were required to decide, among other things, from which state the limitations period should be borrowed, which limitations period should be borrowed from that state, and whether federal or state law governed certain procedural matters related to the calculation of that period -- such as "when an

---

[3] We have described this practice, which is still used when § 1658 does not apply, as one that requires the courts to identify "the most analogous statute of limitations in the state where the action was brought." Greenwood ex rel. Estate of Greenwood v. N.H. Pub. Utils. Comm'n, 527 F.3d 8, 13 (1st Cir. 2008). Mercado does not challenge the District Court's determination that the "most analogous" Puerto Rico statute of limitations "is the one-year term set for tort actions by Article 1868 of the Civil Code, P.R. Laws Ann. tit. 31 § 5298(1)." See Mercado v. Puerto Rico, 86 F. Supp. 3d 46, 49 (D.P.R. 2015).

- 8 -

action was 'commenced,' or when service of process had to be effectuated." Id. at 378-79.

The Court emphasized that Congress was "keenly aware" of the difficulties federal courts faced in filling the statute-of-limitations "void." Id. at 380. The Court thus concluded that the "central purpose" of § 1658, which Congress enacted on December 1, 1990, was to reduce the need for courts to engage in such litigation-inducing work. Id.

In light of this legislative purpose, the Court explained that the phrase "a civil action arising under an Act of Congress" in § 1658 should be interpreted in a manner "that fills more rather than less of the void that has created so much unnecessary work for federal judges." Id. The Court thus declined to construe § 1658's text so narrowly that it would apply only to claims that are based on "post-1990 statute[s] that establish[] a new cause of action without reference to preexisting law." Id. at 381 (citations and internal quotation marks omitted).

But the Court also agreed that § 1658 should not be interpreted in a way that "disrupt[ed] the settled expectations" of litigants. Id. And so the Court rejected a construction of § 1658 "under which any new amendment to federal law would suffice to trigger the 4-year statute of limitations," id. at 382 (emphasis added), no matter how inconsequential that amendment might be to the plaintiff's ability to bring the claims at issue.

Having dispensed with each of these polar-opposite interpretations of the scope of § 1658, the Court then described the course that it concluded Congress had actually steered. According to the Court, an enactment that "creates a new right to maintain an action" is one under which a civil action may "aris[e]" within the meaning of § 1658. Id. at 382. And the Court noted that "Congress routinely creates new rights of action by amending existing statutes, and altering statutory definitions, or adding new definitions of terms previously undefined, is a common way of amending statutes." Id. at 381 (alterations, citations, and internal quotation marks omitted).

No matter the form an enactment takes, though, the Court made clear that "[w]hat matters is the substantive effect of an enactment -- the creation of new rights of action and corresponding liabilities." Id. Thus, Jones held, a claim that "necessarily depend[s]" on such an enactment is a claim that "was made possible by" a post-December 1, 1990 enactment and thus a claim for which § 1658 supplies the limitations period. Id. at 382, 384.

The Court explained that it was "not persuaded that any guess work is required to determine whether the plaintiff has alleged a violation of the relevant statute as it stood prior to December 1, 1990, or whether her claims necessarily depend on a subsequent amendment." Id. at 384 (citations and internal quotation marks omitted)). The Court did acknowledge that such a

determination could be "particularly complicated in cases in which there was a split of authority regarding the scope of the original statute."  Id. at 384 n.18.  A case of that type could require a court "to determine whether the amendment clarified existing law or created new rights and liabilities."  Id.  But the Court concluded that such an analysis was "hardly beyond the judicial ken."  Id.  After all, the Court noted, "[c]ourts must answer precisely the same question when deciding whether an amendment may be applied retrospectively."  Id.

**B.**

The Jones Court then applied § 1658 to the facts of that case.  The Jones plaintiffs had brought a number of race discrimination claims under 42 U.S.C. § 1981, which was originally enacted in 1866.  That statute protects, among other things, the right "to make and enforce contracts" free from discrimination on the basis of race.  Id. at 372 (quoting 42 U.S.C. § 1981).

Section 1981 does not contain its own limitations period, however, and the two-year state-law limitations period that would have otherwise applied in Jones had already expired by the time that the Jones plaintiffs filed suit.  Id.  The Jones plaintiffs nonetheless contended that their claims were not time-barred.  Id.  The plaintiffs argued that the four-year limitations period established by § 1658 applied to their claims due to the

relationship between those claims and the changes that had been made to Section 1981 after § 1658's enactment.  Id. at 372-73.

Specifically, in 1989, the Court had ruled in another case that § 1981 "did not protect against . . . conduct that occurred after the formation of the contract."  Id. (citing Patterson v. McLean Credit Union, 491 U.S. 164 (1989)).  But, the plaintiffs noted, in 1991 (and thus after the enactment of § 1658), Congress amended § 1981 to define the term "make and enforce contracts" to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  Id. at 373 (quoting 42 U.S.C. § 1981(b)).  As a result, this amendment "enlarged the category of conduct that is subject to § 1981 liability" to include post-contract-formation discriminatory conduct like that alleged by the Jones plaintiffs.  Id. at 383 (quoting Rivers v. Roadway Express, Inc., 511 U.S. 298, 308 (1994)).

In light of this legislative change, the Court concluded that § 1658 did supply the statute of limitations for the Jones plaintiffs' claims.  The Court explained that their legal claims "did not allege a violation of the pre-1990 version of § 1981 but did allege violations of the amended statute."  Id. at 383.  As a result, the Court held that the Jones plaintiffs' legal claims were "made possible by" the 1991 amendment to § 1981, as their suit to recover for defendants' post-contract-formation conduct

- 12 -

could succeed only by virtue of that amendment and thus "necessarily depend[ed]" on it.  Id. at 383, 384.

## C.

We have had one occasion to construe the scope of § 1658 following Jones.  In Millay v. Me. Dep't of Labor, Bureau of Rehab., Div. for Blind & Visually Impaired, 762 F.3d 152, 155-56 (1st Cir. 2014), we considered whether a statutory amendment sufficed to trigger the catch-all limitations period set forth in § 1658.  We concluded that the amendment had a "substantive effect" that "made possible" the claim at issue because the amendment permitted expanded possibilities for judicial review of the administrative action that the plaintiff was challenging.  Id.

Of course, an amendment that makes a new avenue of judicial review available has a "substantive effect" that is distinct from the liability-enlarging effect of the amendment that was at issue in Jones.  But we nevertheless concluded in Millay that such an amendment still met the Jones standard of having "made possible" the claim at issue.  Id. at 155.

We explained that, although some courts had previously allowed similar challenges to the underlying administrative action "to be enforced through 42 U.S.C. § 1983," the relevant amendments still "created a new and broader remedy" than the one that had previously existed.  Id. at 156. We thus concluded that the amendments there at issue (the 1998 amendments to the

- 13 -

Rehabilitation Act), even if deemed "purely procedural," id., "made possible" the plaintiff's claims because they "enabled the plaintiff to bring the [then-]current proceeding for judicial review," id. And we explained that this conclusion made sense in light of the great interpretive weight that must be given to Congress's clear intention that § 1658 be applied broadly in order to reduce the need for courts to borrow state limitations periods. Id. at 157.

### III.

In light of Jones, and consistent with our application of that precedent in Millay, we conclude that § 1658 establishes the limitations period for Mercado's "regarded as" claims. To explain why we reach this conclusion, we first describe the "substantive effect" of the changes that the ADAAA made to the ADA. We then explain why Mercado's claims "necessarily depend" on those amendments and thus why we conclude that the ADAAA "made possible" Mercado's claims. See Jones, 541 U.S. at 382.

### A.

A review of the relevant legislative history reveals the substantive effect of the change made to the ADA by the ADAAA. When first enacted on July 26, 1990, the ADA defined the term "disability" with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment;

- 14 -

or (C) being regarded as having such an impairment." Americans with Disabilities Act of 1990, Pub. L. No. 101-336, § 3(2), 104 Stat. 327, 329-30 (codified as amended at 42 U.S.C. § 12102(1)). Years later, however, the Supreme Court narrowly construed the third prong of that original definition. Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999). Specifically, the Supreme Court interpreted that prong to require a plaintiff to plead and prove that she was regarded as having an impairment that fit the terms of the first prong -- that is, that she was regarded as having an impairment that substantially limited one or more major life activities. Id.

Nearly a decade later, however, Congress passed the ADAAA. Those 2008 amendments expressly rejected the interpretation of "regarded as having such an impairment" that the Court had set forth in Sutton. Pub. L. No. 110-325, sec. 1, § 2(b)(3). In enacting those amendments, Congress changed the relevant portion of the ADA by adding a new paragraph (3). That new paragraph defined the scope of the term "being regarded as having such an impairment," id. sec. 4, § 3(1)(C), as follows:

> An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

- 15 -

Id. sec. 4, § 3(3)(A) (emphasis added).[4]

Thus, the 2008 amendments codified in the ADAAA made the ADA's definition of being "regarded as" having an impairment substantively broader than that definition had been in the period after Sutton.  During that period, a plaintiff could maintain an ADA claim based on being regarded as having an impairment only if she pleaded that she was regarded as having a physical or mental impairment that substantially limited one or more major life activities.  See Sutton, 527 U.S. at 489.  After the enactment of the ADAAA, however, a plaintiff bringing a "regarded as" claim under the ADA needs to plead and prove only that she was regarded as having a physical or mental impairment.  Such a plaintiff no longer needs to plead and prove that such impairment substantially limited one or more major life activities.  Pub. L. No. 110-325, sec. 4, § 3(3)(A).  Thus, while the change made to the ADA by the ADAAA may not be as significant as the change made by the amendment to section 1981 at issue in Jones, the change is still one that had a substantive effect.  Cf. McCormick v. Miami Univ., 693 F.3d 654, 663 (6th Cir. 2012) (declining to apply § 1658 where the operative amendments -- the 1992 Amendments to the Rehabilitation Act -- "essentially changed the nomenclature in [the relevant

_____

[4] The ADAAA also amended the third prong of the definition of disability to read: "being regarded as having such an impairment (as described in paragraph (3))."  Pub. L. No. 110-325, § 3(a).

section] by replacing the word 'handicap' with the word 'disability.'").

## B.

The remaining question is whether Mercado's "regarded as" claims "necessarily depend" on the substantive effect brought about by the change that the ADAAA made to the ADA. See Jones, 541 U.S. at 384. We conclude that the claims she brought in her 2014 complaint do "necessarily depend" on that change and thus that her claims were "made possible" by those 2008 amendments. See id. at 382.

Mercado's complaint expressly refers to the 2008 amendments in pleading her "regarded as" claims. By "enlarg[ing] the category of conduct that is subject to [] liability," id. at 383, those amendments permit Mercado to plead and prove one fewer element of her "regarded as" claims than she would have been required to plead and prove under the ADA as it existed prior to those amendments. By virtue of those liability-enlarging amendments, Mercado need not plead and prove that the defendants regarded her as having a physical or mental impairment that substantially limited a major life activity. She need plead and prove only that the defendants regarded her as having a physical or mental impairment, no matter the defendants' view of the magnitude of the effect of the perceived impairment on her life activities.

For that reason, Mercado's legal claims "necessarily depend" on the 2008 amendments.  See id. at 384.  Accordingly, her claims "aris[e] under" an Act of Congress passed after December 1, 1990.  See 28 U.S.C. § 1658.

**C.**

The District Court mistakenly concluded otherwise by holding that the ADAAA merely "clarif[ied]" a pre-existing ADA right to be protected from "regarded as" discrimination.  Mercado, 86 F. Supp. 3d at 49.  According to the District Court, this conclusion followed because it was "apparent" that the "elements" of the ADA's definition of "disability" were "identical" pre- and post-amendment by the ADAA.  Id. at 49 n.2.  Thus, the District Court ruled that Mercado's claims "would have been actionable under the original provisions of the ADA."  Id. at 49.

But, as we have explained, the ADAAA added a new paragraph to the ADA that changed the definition of the term "regarded as having such an impairment."  ADA Amendments Act of 2008, Pub. L. No. 110-325, sec. 4, § 3(3)(A).  That new paragraph removed a key element of that definition and thereby broadened the ADA's substantive scope.  Thus, contrary to the District Court's assertion, the elements of the definition pre- and post-amendment are not identical.  They are instead substantively distinct, with the consequence that the amended definition creates a broader right

- 18 -

to be free from "regarded as" discrimination than did the unamended definition.

To be sure, the preamble to the ADAAA, Pub. L. No. 110-325, sec. 2, §§ 2(a)(4), 2(b)(1), does state that Congress originally intended the term "regarded as having such an impairment" to be read more broadly than the Supreme Court read it to be in Sutton, 527 U.S. at 489. But, even if that statement can be said to have characterized the 2008 amendments as having merely clarified (rather than altered) the original scope of the ADA, such a legislative statement cannot strip the 2008 amendments of the "substantive effect" that they undeniably had. The ADAAA explicitly rejected Sutton. In so doing, the ADAAA quite clearly broadened the definition of being "regarded as" having an impairment beyond what it had been under the previously controlling Supreme Court interpretation of that phrase. Pub. L. No. 110-325, sec. 2, § 2(b)(3), sec. 4, § 3(3)(A).

Thus, this is not a case in which "there was a split of authority regarding the scope of the original statute" that would require us to "determine whether the amendment clarified existing law or created new rights and liabilities." Jones, 541 U.S. at 385. Rather, this is a case in which the substantive effect of the amendments in question is clear. Those 2008 amendments rejected the narrow interpretation of the statute set forth in a controlling Supreme Court opinion. By doing so, those amendments

clearly created new rights and liabilities.  And because, as we have explained, Mercado's claims "necessarily depend" on the expanded liability created by those amendments, her claims are governed by the catch-all limitations period that § 1658 sets forth.  See Jones, 541 U.S. at 384.

**D.**

The defendants do make one additional argument against our conclusion, but we do not find it to be persuasive.  The defendants argue that § 1658's limitations period does not apply because Mercado's actual complaint alleges that she was regarded by the defendants as having a "major" mental impairment rather than a minor one.  [Administración Br. 23].  The defendants contend that this reference to a "major" impairment in her complaint shows that her complaint alleges facts that would have been sufficient to state a claim even under the ADA as it stood after Sutton but before the enactment of the ADAAA.  For that reason, the defendants assert, Mercado's claims do not "necessarily depend" on -- and thus are not "made possible by" -- the 2008 amendments set forth in the ADA.  Rather, the defendants argue that her complaint -- on the strength of the factual allegation that she was "regarded as" having a "major" impairment -- states claims on which relief under the ADA could have been granted even if the ADAAA had never been enacted.

The defendants' contention arguably draws support from the fact that the Jones plaintiffs' claims of hostile work environment, wrongful termination, and failure to transfer "alleged violations of the amended statute" but "did not allege a violation of the pre-1990 version of section 1981." 541 U.S. at 383 (emphasis added). Here, by contrast, defendants contend that Mercado is -- by referring to a "major" impairment in her complaint -- alleging a claim that she could have brought under the original version of the ADA.

But we do not believe Jones requires that we attribute the significance that defendants do to the complaint's reference to a "major" impairment. The 1991 amendment to § 1981 that was at issue in Jones left the pre-existing version of the discrimination claim intact even as it also made possible new discrimination claims by subjecting post-contract-formation conduct to § 1981 liability for the first time. The ADAAA, by contrast, replaced the pre-existing "regarded as" claim with a new "regarded as" claim that requires a plaintiff to plead and prove one fewer element. The ADAAA thus did not add a new claim so much as it reduced the requirements to prove an existing one. But this difference in the form that Congress used to enlarge liability does not mean that the ADAAA did not "ma[k]e possible" Mercado's claims. See Jones, 541 U.S. at 382.

Just as the 1991 amendment to § 1981 at issue in Jones allowed plaintiffs to plead and prove elements of a discrimination claim that previously was not available, so, too, does the ADAAA. Under the 2008 amendments, on which Mercado's 2014 complaint relies, she may now recover for discrimination without showing (as the ADA previously required) that the defendants regarded her impairment as a substantially life-altering one. Thus, by asserting in her complaint a violation of the new, substantively broader right protected by the amended ADA rather than the narrower right protected by the unamended ADA, she is asserting a claim that did not exist before just as was true of the plaintiffs in Jones. The 2008 amendments therefore "made possible" the particular legal claims that Mercado has brought, even if her complaint also contains factual allegations that perhaps could have supported the different and harder-to-prove "regarded as" claim that existed prior to the 2008 amendments but that Congress has replaced and that she is not now bringing.[5]

Simply put, an amendment to a statute that bars a new, broader form of discrimination may still "ma[ke] possible" a plaintiff's suit to redress that discrimination, even if it may be true that the plaintiff has also suffered a different, more

---

[5] This conclusion obviates the need to engage with the precedent cited by Mercado for the proposition that her complaint would not have stated a claim under the pre-ADAAA version of the ADA.

specific form of discrimination that the unamended statute already barred. We thus conclude that -- notwithstanding the reference to a "major" impairment in Mercado's complaint -- Mercado's legal claims "necessarily depend" on the 2008 amendments to the ADA no less than the Jones plaintiffs' legal claims "necessarily depend[ed]" on the 1991 amendment to § 1981. See id. at 384. Indeed, in this case, a contrary conclusion would oddly make the catch-all limitations period that § 1658 sets forth applicable only if Mercado amended her complaint to delete a factual allegation that she need not make in order to plead the only "regarded as" claims that she actually brings in her 2014 complaint. We decline to read Jones to require such a strange result.

## IV.

Congress enacted § 1658 in order to reduce the need for litigation about how best to fill the "void" that arises when statutes fail to specify the limitations period applicable to the causes of action they create. See Jones, 541 U.S. at 380. Recognizing that purpose, Jones construed § 1658 broadly. Id. at 380-82. Following the same interpretive approach, and consistent with our precedent instructing that we should do so, see Millay, 762 F.3d at 155-57, we conclude that § 1658 supplies the limitations period here, due to the 2008 amendments that "made possible" Mercado's claims. See Jones, 541 U.S. at 382.

- 23 -

For the foregoing reasons, we **reverse** the District Court's order of dismissal and we **remand** for further proceedings.