# United States Court of Appeals
## For the First Circuit

No. 18-1011

MARK MANCINI,

Plaintiff, Appellant,

v.

CITY OF PROVIDENCE, by and through its Treasurer,
James J. Lombardi, III,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Thompson, Circuit Judges.

Mark P. Gagliardi for appellant.
Kevin F. McHugh, Senior Assistant City Solicitor, with whom
Jeffrey Dana, City Solicitor, and Steven B. Nelson, Associate City
Solicitor, were on brief, for appellee.

November 21, 2018

**SELYA**, **Circuit Judge**.  Plaintiff-appellant Mark Mancini is a veteran police officer in Providence, Rhode Island (the City).  Following an injury that he sustained while on duty, Mancini sued the City for discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, and related state antidiscrimination laws.  The district court granted the City's motion for summary judgment, and Mancini now appeals.  Although our reasoning differs to some extent from that of the district court, we affirm.

## I. BACKGROUND

We rehearse the facts in the light most hospitable to Mancini, consistent with record support, and trace the travel of the case.  See Ahern v. Shinseki, 629 F.3d 49, 51 (1st Cir. 2010); Gillen v. Fallon Ambul. Serv., Inc., 283 F.3d 11, 17 (1st Cir. 2002).

On November 15, 2010, Mancini (then a sergeant) sustained a knee injury while in pursuit of a suspect.  Mancini received medical treatment, including arthroscopic surgery.  He was placed on injured on duty (IOD) status and remained out of work until May of 2011.  He was then placed on "light duty" (a temporary assignment for officers on IOD status).  That placement lasted until August of 2011, when he was removed from light duty.

On September 2, 2011, Mancini filed for accidental disability benefits, which, if granted, would effectively comprise

- 2 -

an early retirement. Mancini alleges that this application was not filed of his own volition but, rather, was filed at the behest of his supervisor. In all events, the application was denied on June 27, 2012, based on three independent medical examinations. Thereafter, the City refused to allow Mancini to return to work on light duty.

A few weeks before his accidental disability benefits application was denied, Mancini sat for the 2012 lieutenants promotional examination. As determined by the collective bargaining agreement (CBA) between the City and the police union, promotion to lieutenant is based on four components: a written examination, level of seniority, level of education, and service points awarded by the Chief of Police (the Chief). Candidates may receive a score of up to 85 points for the written examination and, for each of the remaining components, may receive up to 5 points.

Seniority and education levels have fixed formulae, with points awarded for number of years in service and degrees earned, respectively. The Chief has broad discretion with respect to the award of service points, but the CBA specifies that letters of commendation, letters of merit, and unused sick time may be taken into account. When all is said and done, candidates are ranked based on their final scores, and the City fills the available positions from the top of the list.

In June of 2012, Mancini scored a 92 on the written exam, earning 78.2 points toward his final score. He received a full 5 points for seniority and a full 5 points for education. For the service-point component — determined prior to the administration of the written examination — the Chief awarded Mancini 0 points. Mancini's aggregate score placed him seventh among the sixteen aspirants. As the City had only five open lieutenant positions, he was not promoted. One additional point would have altered the mix and ensured his promotion.

Mancini did not accept his rejection lightly. He exhausted his administrative remedies, filing charges of disability discrimination with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission (EEOC). After obtaining right-to-sue letters from both agencies, he sued the City in the United States District Court for the District of Rhode Island.[1] In material part, his complaint alleged that the City discriminated against him on the basis of his disability when the Chief awarded him no service points and, thus, prevented him from obtaining a total score that would have resulted in his promotion. He characterized the City's actions as

---

[1] Mancini originally named the Chief as an additional defendant. After receiving an answer to a certified question from the Rhode Island Supreme Court, see Mancini v. City of Prov., 155 A.3d 159, 167 (R.I. 2017), the district court dismissed Mancini's claims against the Chief. Mancini does not appeal this order of dismissal, and we therefore treat the City as the sole defendant.

a failure to promote on the basis of disability under the ADA and under a gallimaufry of state laws. See, e.g., R.I. Gen. Laws § 42-112-1 et seq.; id. § 42-87-1 et seq.; id. § 28-5-1 et seq.

Following the close of discovery, the parties cross-moved for summary judgment. The district court granted summary judgment in favor of the City, concluding that Mancini had failed to establish that he was disabled within the meaning of the ADA. See Mancini v. City of Prov., 282 F. Supp. 3d 459, 467 (D.R.I. 2017). The district court likewise granted summary judgment for the City on Mancini's state-law claims, reasoning that Mancini's failure to show a cognizable disability scuttled those claims as well. See id.; see also DeCamp v. Dollar Tree Stores, Inc., 875 A.2d 13, 25 (R.I. 2005) (characterizing the process of proving disability under state law as "[p]aralleling the federal Americans with Disabilities Act").

Mancini countered by filing a motion to vacate the judgment. The district court denied that motion and this timely appeal ensued.

## II. ANALYSIS

On appeal, Mancini trains his fire on the district court's entry of summary judgment against him on his ADA claims.[2]

---

[2] Mancini does not challenge the district court's conclusion that his state-law claims stand or fall in line with his federal claims. Nor does he make any independent argument regarding the

- 5 -

We review a district court's grant of summary judgment de novo, mulling the summary judgment record and all reasonable inferences therefrom in the light most agreeable to the nonmoving party (here, Mancini). See Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011); Mandel v. Bos. Phoenix, Inc., 456 F.3d 198, 204-05 (1st Cir. 2006). We will affirm only if the record discloses "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Avery, 661 F.3d at 693 (quoting Fed. R. Civ. P. 56(a)). To carry out this inquiry, we must determine whether Mancini has produced "specific facts sufficient to deflect the swing of the summary judgment scythe." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). "[C]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation" will not suffice. Ahern, 629 F.3d at 54.

Under the ADA, the City, as a "covered entity," shall not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). We apply the familiar McDonnell Douglas burden-shifting framework in reviewing the entry

entry of summary judgment on those claims. Consequently, there is no need for us to discuss the state-law claims.

- 6 -

of summary judgment with respect to discrimination claims that rely upon indirect evidence. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).

This compendium of claims includes claims of disability discrimination under the ADA. See Gillen, 283 F.3d at 29-30; Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999). When traveling the path demarcated by McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination. See Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004). This is a task that the Supreme Court has described as "not onerous." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

As said, Mancini has characterized his claim as one alleging a failure to promote on the basis of disability. The prima facie elements of a failure-to-promote claim are that the plaintiff "(i) is a member of a protected class who (ii) was qualified for an open position for which [he] applied, but (iii) was rejected (iv) in favor of someone possessing similar qualifications." Rathbun, 361 F.3d at 71.[3] These elements, if

---

[3] We note that Mancini's allegations are somewhat of a square peg in the round hole of failure-to-promote claims. The discriminatory action alleged is not that Mancini was "rejected" for promotion to lieutenant because of his disability but, rather, that the Chief's award of 0 service points was due to his disability and negatively impacted the likelihood that Mancini would achieve a total score that would entitle him to promotion. Because we find that Mancini's claims fail for other reasons, see

shown, "raise an inference of intentional discrimination," shifting the burden to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. Id. Elsewise, "the inference of discrimination never arises, and the employer's motion for summary judgment will be granted." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991).

It stands to reason that a plaintiff claiming disability discrimination cannot satisfy the first element of his prima facie case unless he can show that he has a disability within the meaning of the ADA. See Ramos-Echevarría v. Pichis, Inc., 659 F.3d 182, 186 (1st Cir. 2011). In that regard, the ADA offers three alternative definitions of disability: "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A)[4]; "a record of such an impairment," id. § 12102(1)(B); or "being regarded as having such an impairment," id. § 12102(1)(C). There is no per se rule about either the type or quantum of evidence that a plaintiff seeking to establish a disability must supply. See Katz v. City Metal Co., 87 F.3d 26, 32 (1st Cir. 1996).

---

text infra, we need not drill down into the ramifications of this odd configuration.

[4] This species of disability is sometimes referred to as "actual disability." See Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act, as Amended, 76 Fed. Reg. 16978, 16980 (Mar. 25, 2011).

- 8 -

Here, the City argues that Mancini has not demonstrated an impairment (and, thus, has not demonstrated a disability) within the purview of the ADA. In support, the City points out that Mancini failed to proffer any medical evidence showing an impairment. The City's premise is correct: at summary judgment, Mancini did not produce a shred of substantiating medical evidence. But the City's conclusion does not follow: in the circumstances of this case, the absence of medical evidence does not get the City where it wants to go.

Whether medical evidence is necessary to support a disability discrimination claim is a determination that must be made on a case-by-case basis. See id. "Some long-term impairments would be obvious to a lay jury (e.g., a missing arm)," and even the "plaintiff himself . . . might offer a description of treatments and symptoms over a substantial period that would put the jury in a position where it could determine that he did suffer from a disability within the meaning of the ADA." Id. It follows, we think, that in evaluating whether medical evidence was required to show that Mancini had a physical impairment, the critical inquiry is whether a lay jury would be capable of making such an assessment without medical evidence. See id. The district court thought not: it ruled that Mancini's "actual disability" and "record of disability" claims were defective for this reason. See Mancini, 282 F. Supp. 3d at 467.

Mancini's appeal takes aim at this ruling. Before addressing his arguments, though, we pause to reflect upon the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553, which applies in this case and which ushered in a brave new world for disability discrimination claims.

In the ADAAA, Congress expressly rejected the strict standards imposed on the definition of "disability" by the Supreme Court and the EEOC. See id. § 2(b)(2-4). Congress accomplished this reformation by amending the relevant provisions of the ADA to include clarifying details, rules of construction, and examples that underscore the broad applicability of the statute. See id. § 4; 42 U.S.C. § 12102. As enacted, the ADAAA specifically admonished that "[t]he definition of disability . . . shall be construed in favor of broad coverage of individuals . . . , to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). The EEOC followed suit, promulgating new regulations to like effect. See 29 C.F.R. § 1630.2.

It is against this backdrop that we examine Mancini's assertion that he has a disability within the meaning of the ADA. The first two definitions of disability — "actual disability" and "record of disability" — represent two sides of the same coin. Both definitions hinge on whether the plaintiff has shown a physical or mental impairment that affects a major life activity, and if so, whether the impairment substantially limits the major

life activity.  See Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002); Lebron-Torres v. Whitehall Labs., 251 F.3d 236, 239-40 (1st Cir. 2001).

There is a salient distinction between "actual disability" and "record of disability" claims.  "Actual disability" requires a showing that the plaintiff has a cognizable disability.  See Ramos-Echevarría, 659 F.3d at 186.  In contrast, "record of disability" may be satisfied by a showing that the plaintiff had a disability in the past (even though he no longer suffered from that disability when the allegedly discriminatory action took place).  See id. at 190.

With these two definitions in place, we turn to Mancini's plaint that his case was robust enough to survive summary judgment under either definition.  We begin with the question of whether Mancini adequately established, for summary judgment purposes, that he had a cognizable physical impairment.

Applicable regulations define physical impairment as including "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems."  29 C.F.R. § 1630.2(h).  The Supreme Court originally held that an impairment must be "permanent or long term" in order to qualify as a disability.  Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002).  The ADAAA, though, changed the ground rules and defenestrated this requirement.  See 42 U.S.C.

- 11 -

§ 12102(4)(D). Consistent with this statutory shift, the EEOC regulations now provide that a cognizable impairment may last fewer than six months, see 29 C.F.R. § 1630.2(j)(1)(ix), as long as it is "sufficiently severe," 29 C.F.R. pt. 1630, App. at 387. So viewed, the regulations lower the bar as to what can comprise an impairment under the ADA. See, e.g., id. at 379 (listing hearing loss, osteoporosis, or arthritis as conditions that would qualify as impairments). Pertinently for present purposes, it is clear that injuries can comprise impairments, even when their impact is only temporary. See Summers v. Altarum Inst., Corp., 740 F.3d 325, 332-33 (4th Cir. 2014); see also Cannon v. Jacobs Field Servs. N. Am., Inc., 813 F.3d 586, 591 (5th Cir. 2016).

Taking the summary judgment record in the light most favorable to Mancini — as we must — his injuries would appear to qualify as a physiological condition affecting one or more body systems. After all, he was injured on the job, required surgery to his knee and other medical care, and was placed on a special employment status. But the fact that his condition could qualify as an impairment does not complete our inquiry. The district court's main holding was that Mancini did not establish that he had an impairment because he failed to supply any medical evidence of the claimed impairment. See Mancini, 282 F. Supp. 3d at 466-67.

In formulating this holding, the court dwelt on Mancini's statement that a doctor diagnosed him with "chondromalacia of the right knee."[5] Id. at 467 (emphasis in original). The court noted that Mancini's description of his diagnosis in his affidavit was "the only evidence of a medical diagnosis." Id. at 466-67. The City echoes this refrain, arguing that it is "inconceivable that a lay person would . . . know what chondromalacia of the knee is."

There is a grain of truth in the City's argument. Medical evidence is more likely to be necessary to show an impairment when a condition would be unfamiliar to a lay jury and only an expert could diagnose that condition. See, e.g., Felkins v. City of Lakewood, 774 F.3d 647, 648, 652 (10th Cir. 2014) (requiring medical testimony to establish that plaintiff's diagnosis of avascular necrosis, "a rare condition that can cause bone tissue to die from poor blood supply," was an impairment). Were Mancini's use of the term "chondromalacia" the only insight into the nature of his alleged impairment, medical evidence might well be necessary. But the City's focus on this term is a red herring: the record makes manifest that Mancini alleged that his impairment was a knee injury. Although Mancini used the term

---

[5] Of course, the plaintiff's statement as to what a doctor told him is hearsay and, thus, is not probative of the truth of the matter asserted. See Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).

- 13 -

"chondromalacia" once in his affidavit and twice in other submissions to the district court, the vast majority of his references were to a knee injury, simpliciter. The relevant question, then, is whether Mancini was required to present medical evidence that he had a knee injury.

A missing arm serves as an obvious example of an impairment that can be demonstrated without any supporting medical testimony. See Katz, 87 F.3d at 32. That is not to say, though, that an impairment must be as apparent as the lack of a limb in order to render medical evidence unnecessary. In Katz, for example, we expressed "no doubt that a rational jury could conclude, even without expert medical testimony," that the plaintiff's heart attack was a condition affecting the cardiovascular system and therefore was a physical impairment for purposes of the ADA. Id. at 31. So, too, the Third Circuit determined that a plaintiff's "failure to present medical evidence of his impairment" was not fatal because arm and neck pain are "among those ailments that are the least technical in nature and are the most amenable to comprehension by a lay jury." Marinelli v. City of Erie, 216 F.3d 354, 361 (3d Cir. 2000). On a spectrum that ranges from missing limbs to rare medical infirmities, some conditions plainly fall within the universe of impairments that a lay jury can fathom without expert guidance. These conditions do not require medical evidence in an ADA case.

In our view, a knee injury falls within that universe. We hold, therefore, that at the summary judgment stage, medical evidence was not required to establish that Mancini's knee injury constituted an impairment. In other words, a lay jury could find, on this record, that Mancini had a physical impairment — a knee injury — within the meaning of the ADA.

This conclusion gets Mancini partway home on both his "actual disability" and "record of disability" claims, but it does not get him all the way. The next question is whether Mancini has shown that his impairment substantially limits major life activities. See Ramos-Echevarría, 659 F.3d at 187. This question has two sub-parts.

First, it is the plaintiff's burden to identify the major life activity that is affected. See id. at 188. To this end, Mancini has stated in his affidavit that his impairment affects the major life activities of standing, walking, and bending. In the absence of congressional guidance, the Supreme Court had previously held that an activity qualified as a major life activity only if it was "of central importance to daily life." Toyota, 534 U.S. at 197. The Court also had held that the term "major" was to be interpreted strictly. Id.

The ADAAA reconfigured the legal landscape, removing much of the guesswork as to which life activities should be deemed major. The ADAAA accomplished this reform partially by providing

- 15 -

a non-exhaustive list of major life activities and a list of major bodily functions (the operation of which comprise major life activities). See 42 U.S.C. § 12102(2); see also 29 C.F.R. § 1630.2(i)(2) (clarifying that a "major life activity" is no longer to be "determined by reference to whether it is of 'central importance to daily life'" and that "the term 'major' shall not be interpreted strictly to create a demanding standard for disability"). The activities identified by Mancini — standing, walking, and bending — all appear on the ADA's list of major life activities. See 42 U.S.C. § 12102(2)(A).

This leaves the second sub-part of the question: has Mancini adduced evidence sufficient to create a genuine issue of material fact as to whether his impairment substantially limits one or more major life activities? Although the phrase "substantially limits" was once interpreted strictly, see, e.g., Rolland v. Potter, 492 F.3d 45, 47 (1st Cir. 2007) (citing Toyota, 534 U.S. at 197), the revised statutory and regulatory framework now provides — and provided at the times material to Mancini's suit — that "substantially limits" is not intended to be a "demanding standard" and should not engender "extensive analysis," 29 C.F.R. § 1630.2(j)(1). Withal, a determination as to whether this "substantially limits" requirement has been satisfied calls for a comparison between the plaintiff's limitations and those of the majority of people in the general population. See id.

- 16 -

Guided by these standards, we examine Mancini's asseveration that he has made out a genuine issue of material fact as to whether his impairment substantially limits his ability to stand, walk, and/or bend.[6] In order to have established that his impairment substantially limits one or more major life activities, Mancini must have offered evidence sufficient to show that his impairment limited him to a substantial extent. See Ramos-Echevarría, 659 F.3d at 187. Medical evidence may be needed to help make this showing, even in some cases in which medical evidence is not necessary to show the impairment itself. See Katz, 87 F.3d at 31. But cf. 29 C.F.R. § 1630.2(j)(1)(v) (noting that "substantially limits" inquiry "usually will not require scientific, medical, or statistical analysis").

The court below determined that Mancini had failed to adduce evidence sufficient to show that his alleged impairment substantially limited one or more of his major life activities. See Mancini, 282 F. Supp. 3d at 466-67. Specifically, the court perceived two dispositive evidentiary lacunae: a failure to

---

[6] On appeal, Mancini does not allege that he was substantially limited in the major life activity of working. Had such an allegation been made, it would have required Mancini to show a substantial limitation in his "ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities." 29 C.F.R. pt. 1630, App. at 390; see Nurriddin v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016), cert. denied, 137 S. Ct. 2159 (2017); Carothers v. Cty. of Cook, 808 F.3d 1140, 1147 (7th Cir. 2015). Mancini has not so much as attempted such a showing.

- 17 -

demonstrate a "connection between any diagnosis and the claimed physical limitations" to major life activities, id. at 467, and a failure to adduce sufficient evidence that those alleged limitations were substantial, see id. at 466-67.

The significance of the first of these gaps depends on whether the district court was correct that Mancini was required to furnish medical evidence of a nexus between his impairment and his purported limitations. See, e.g., Russell v. Phillips 66 Co., 687 F. App'x 748, 754-55 (10th Cir. 2017) (finding medical evidence necessary to show that plaintiff's depression medication caused insomnia); Felkins, 774 F.3d at 652 (finding expert medical testimony necessary to establish that plaintiff's claimed avascular necrosis caused alleged limitations in major life activities). This type of evidence is needed in cases in which such a connection is less than pellucid. Here, however, the causal connection is not complicated. We cannot conceive that a lay jury would have difficulty grasping the connection between a knee injury and problems in conducting major life activities such as standing, walking, and bending. It is a common-sense proposition that Mancini's knee injury (which required surgery and led to his placement on IOD status) limited to some degree activities to which Mancini's use of his leg was integral. Accordingly, there was no need for Mancini to proffer medical evidence regarding causation in order to defeat summary judgment.

The second evidentiary gap identified by the district court is much more troubling. Once again, we take a case-by-case approach, mindful that impairments may be of different degrees and may affect different individuals in different ways. See Toyota, 534 U.S. at 199. Taking into account factors such as the "condition, manner, or duration" of performance may aid this assessment. 29 C.F.R. § 1630.2(j)(4)(i). For instance, where the major life activity of standing is at issue, an inquiring court may weigh the significance of evidence that the plaintiff was unable to stand for particular periods of time. See, e.g., McDonough v. Donahoe, 673 F.3d 41, 48 (1st Cir. 2012).

It is noteworthy, we think, that Mancini claims substantial limitations in everyday activities such as standing, walking, and bending. Claims of substantial limitation to such quotidian activities normally do not require medical evidence to survive summary judgment. See, e.g., Williams v. Tarrant Cty. Coll. Dist., 717 F. App'x 440, 448 (5th Cir. 2018), reh'g denied (Feb. 20, 2018). A plaintiff's detailed description of his limitations, standing alone, often will be sufficient to overcome the "relatively low bar created by the substantially-limits and summary-judgment standards." Id.

A relatively low bar, though, is not the same as no bar at all. Mancini must still be able to point to some competent evidence in the summary judgment record sufficient to show

- 19 -

substantial limitation. Although this "evidence need not necessarily be composed of excruciating details as to how the plaintiff's capabilities have been affected by the impairment," Gillen, 283 F.3d at 24, a plaintiff must give a court some facts with which to work. It does not suffice merely to allege in a wholly conclusory fashion, without any further details or supporting documentation, that an impairment substantially limits one's major life activities. See Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 34-35 (1st Cir. 2009); see also Holton v. First Coast Serv. Options, Inc., 703 F. App'x 917, 921 (11th Cir. 2017), cert. denied, 138 S. Ct. 1265 (2018).

A comparison of the decisions in Holton and Williams illustrates the point. In Holton, the court found insufficient the plaintiff's conclusory allegations that she had a back impairment that "when active substantially limit[ed] one or more of [her] major life activities, including but not limited to, walking, bending and sitting." 703 F. App'x at 921. This contrasts sharply with the plaintiff's affidavit in Williams — deemed sufficient to avert summary judgment — which elaborated in detail upon the plaintiff's injuries, symptoms, and treatment. See 717 F. App'x at 447.

The case at hand lines up with Holton, not with Williams. In his summary judgment motion, Mancini stated only that his "knee injury substantially limited his ability to stand, walk, [and]

bend . . . such that he could not perform the essential functions of [his] position." His affidavit was equally unilluminating: it contained only the same type and kind of conclusory statements. There was not so much as a hint as to how or in what ways the alleged limitation manifested itself.

Mancini's wholly conclusory allusions to substantially limited performance of major life activities are a far cry from the plaintiff's affidavit in Williams — and they bear a striking similarity to the plaintiff's unilluminating descriptions in Holton. It is hornbook law that a plaintiff cannot avoid summary judgment by relying solely on conclusory allegations. See, e.g., García-González v. Puig-Morales, 761 F.3d 81, 87 (1st Cir. 2014); Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013); Fleet Nat'l Bank v. H&D Entm't, Inc., 96 F.3d 532, 540 (1st Cir. 1996). Applying these tenets, we have consistently found that plaintiffs proffering considerably more evidence than Mancini has provided cannot defeat summary judgment. See, e.g., McDonough, 673 F.3d at 47-48; Carreras v. Sajo, García & Partners, 596 F.3d 25, 34-35 (1st Cir. 2010).

In an effort to backfill these deficiencies, Mancini now points to his IOD status and his application for disability benefits as evidence of substantial limitation. He posits — the emphasis is his — that if he was unable to work due to his injury, "it logically follows that he must have been substantially limited

- 21 -

in his ability to walk, stand, and bend as compared to most people in the general population."  But neither Mancini's IOD status nor his disability benefits application equates with an inability to work; the record reflects that Mancini was on IOD status during the time that he worked "light duty," as well as when he was found not disabled and his disability benefits application was denied because a majority of independent medical examiners deemed him capable of working.  And in any event, a more specific showing was required as to whether Mancini was substantially limited in his ability to walk, stand, or bend (the major life activities that Mancini claims were compromised).

The two pieces of evidence that Mancini cites do not fill this void.  The application for disability benefits was denied and, at any rate, says nothing about limitations (substantial or otherwise) on major life activities.  By the same token, Mancini's placement on IOD status tells us only that he sustained some sort of injury while on duty (roughly a year and a half before the allegedly discriminatory action occurred).  The barebones record contains no explanation of the parameters of this status; in particular, nothing cross-references IOD status with deficits in walking, standing, or bending.  The opacity of this status weighs against Mancini, who had the burden of showing what "IOD status" entailed, see Ramos-Echevarría, 654 F.3d at 186, and who utterly failed to carry this burden.

The short of it is that Mancini has disregarded the need for facts and has pinned his hopes to conclusory averments. Mancini was obliged to offer some evidence that he was substantially limited in the performance of one or more major life activities at the time of the allegedly discriminatory action ("actual disability") or some time prior to that ("record of disability"), and he has defaulted on that obligation. Simply mimicking the language of the ADA, without more, does not suffice. See Holton, 703 F. App'x at 921; see also Gonzalez v. El Dia, Inc., 304 F.3d 63, 74 (1st Cir. 2002) (holding that testimony parroting EEOC regulations on substantial limitations, without more, "would not enable a rational trier of fact to undertake the case-by-case assessment demanded under the ADA"). He thus has failed to adduce evidence adequate to create a genuine issue of material fact as to the "substantially limits" requirement. For this reason, we uphold the district court's entry of summary judgment on Mancini's "actual disability" and "record of disability" claims.

This does not end our odyssey. The ADA contains a further definition of disability, and Mancini tries to hang his hat on that definition, asserting in this court that he was "regarded as" having a disability. See 42 U.S.C. § 12102(1)(C). This avenue remains open to him despite his failure to make out a genuine issue of material fact with respect to his "actual disability" and "record of disability" claims. See 29 C.F.R.

- 23 -

§ 1630.2(g)(3) (suggesting that, with exceptions not relevant here, "it is generally unnecessary to proceed under the 'actual disability' or 'record of' prongs"); Alexander v. Wash. Metro. Area Transit Auth., 826 F.3d 544, 547 (D.C. Cir. 2016) (explaining that "after the 2008 Amendments, the regarded-as prong has become the primary avenue for bringing" disability discrimination claims).

Unlike "actual disability" and "record of disability" claims, "regarded as" claims require only a showing that the plaintiff "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment." 42 U.S.C. § 12102(3)(A). It is not necessary for the plaintiff to prove that the impairment limits or is perceived to limit a major life activity.[7] See id.; see also Mercado v. Puerto Rico, 814 F.3d 581, 588 (1st Cir. 2016). This distinction is another by-product of the ADAAA: the Supreme Court originally interpreted the ADA to require a plaintiff in a "regarded as" case to establish that his impairment either limited or was perceived to limit a major life activity, see Mercado, 814 F.3d at 588

---

[7] Even though an impairment need not limit a major life activity in order to ground a "regarded as" claim, it cannot be "transitory and minor." 42 U.S.C. § 12102(3)(B). The employer, however, bears the burden of establishing this exception as an affirmative defense. See 29 C.F.R. pt. 1630, App. at 393. In the circumstances of this case, we have no occasion to determine whether the City either raised or offered sufficient evidence to support such an affirmative defense.

(citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)), but this interpretation was annulled by the ADAAA, see § 2(b)(3).

To establish a prima facie "regarded as" claim under the McDonnell Douglas framework, a plaintiff must show, as relevant here, that he had an actual or perceived impairment and that his employer was either aware of or perceived the impairment at the time of the allegedly discriminatory action. See Adair v. City of Muskogee, 823 F.3d 1297, 1306 (10th Cir. 2016). In this context, the term "employer" refers primarily to the person who actually made the allegedly discriminatory decision, not to other supervisors or officials within the organization. See Bruzzese v. Sessions, 725 F. App'x 68, 71 (2d Cir. 2018).

Although the requirements for a prima facie "regarded as" claim are less demanding than those for either an "actual disability" or "record of disability" claim, a threshold problem looms. For aught that appears, Mancini did not raise such a claim in the district court. "We have held, with echolalic regularity, that theories not squarely and timely raised in the trial court cannot be pursued for the first time on appeal." Iverson v. City of Bos., 452 F.3d 94, 102 (1st Cir. 2006) (collecting cases). Indeed, "[i]f any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first

time on appeal." _Teamsters Union, Local No. 59_ v. _Superline Transp. Co._, 953 F.2d 17, 21 (1st Cir. 1992). This rule "requires litigants to spell out their legal theories face-up and squarely in the trial court; if a claim is 'merely insinuated' rather than 'actually articulated,' that claim ordinarily is deemed unpreserved for purposes of appellate review." _Iverson_, 452 F.3d at 102 (quoting _McCoy_ v. _Mass. Inst. of Tech._, 950 F.2d 13, 22 (1st Cir. 1991)).

The upshot is that a plaintiff cannot appeal on the basis of a claim that was not presented to the district court. _See McCoy_, 950 F.2d at 22. Such a barrier exists here: Mancini simply did not present a "regarded as" claim during the summary judgment proceedings. This omission is fatal. "Courts are entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion." _Id._ at 22 n.7. When a party fails to make an available argument in the district court, he cannot unveil that argument for the first time on appeal. _See Higgins_, 194 F.3d at 259; _United States_ v. _Slade_, 980 F.2d 27, 30 (1st Cir. 1992).

_McCoy_ is instructive. There, we held that a claim was foregone because the plaintiffs had presented it as "the merest of skeletons" in their opposition to the defendant's motion to dismiss. 950 F.2d at 22. We noted that the plaintiffs did not present relevant legal authority, provide statutory analysis, or

otherwise support their claim with cogent reasoning.  See id. Instead, they made "passing mention of the general point — a mention which, in its entirety, comprised two sentences and one citation (to a tangentially relevant case)."  Id.

McCoy and this case are sisters under the skin.  We are unable to locate any developed argumentation supporting a "regarded as" claim in Mancini's summary judgment papers.  In the section of his memorandum arguing that he was disabled within the meaning of the ADA, Mancini listed the three definitions of disability and then provided sections analyzing the first two definitions ("actual disability" and "record of disability"), but not the "regarded as" definition.

To be sure, in wrapping up the one-paragraph section on "record of disability," Mancini included two sentences to the effect that his record of disability demonstrated the City's belief that he was disabled.  The second of these sentences was followed by a citation to a First Amendment case.  See Heffernan v. City of Paterson, 136 S. Ct. 1412 (2016).  Viewing these two sentences most charitably to Mancini, the memorandum might be construed as including a cryptic "regarded as" claim embedded within what would otherwise appear to be a straightforward "record of disability" claim.  The reference was so oblique, though, that the City failed to discern it at all and addressed only Mancini's  "actual

disability" and "record of disability" claims in its counter-memorandum.

Reviewing the pleadings, the cross-motions for summary judgment, the memoranda filed by the parties, and the remainder of the summary judgment record, the district court supportably characterized Mancini as arguing only "actual disability" and "record of disability" claims. See Mancini, 282 F. Supp. 3d at 465-67. In an abundance of caution, the court — when granting summary judgment against Mancini — briefly digressed into what appears to be an analysis of a hypothetical "regarded as" claim, applying pre-ADAAA case law. See id. at 467. The court then got back on track and concluded that "both of Mancini's disability theories fall flat." Id. The word "both," as used by the district court, is an obvious reference to Mancini's "actual disability" and "record of disability" theories.

We have said before — and today reaffirm — that "[o]verburdened trial judges cannot be expected to be mind readers." McCoy, 950 F.2d at 22; cf. United States v. Ladd, 885 F.2d 954, 961 (1st Cir. 1989) ("[R]obes and gavels are the tools of a jurist's trade — not tea leaves or crystal balls."). That the district court made some attempt to address an unpreserved "regarded as" claim does not alter the fact that Mancini failed to articulate such a claim face-up and squarely in his summary judgment papers. We hold, therefore, that Mancini's attempt to

- 28 -

insinuate a previously overlooked "regarded as" claim into his appeal is futile. There is nothing for us to review. Cf. Muddy Waters, You Can't Lose What You Ain't Never Had, on The Chess Box (MCA Records 1989).

One loose end remains. In an attempt to wrest victory from the jaws of defeat, Mancini contends that the district court erred in denying his motion to vacate the adverse judgment. This contention is easily dispatched.

Mancini brought his motion to vacate under Federal Rule of Civil Procedure 60(b). Mancini's motion primarily challenges supposed "mistakes" in the district court's legal analysis. We have held, however, that "an error of law cannot be regarded as a 'mistake'" for the purpose of Rule 60(b)(1). Fisher v. Kadant, Inc., 589 F.3d 505, 513 n.5 (1st Cir. 2009). We thus recharacterize this motion as a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), given that it was filed within twenty-eight days of the date of judgment (the time limit for motions under Rule 59(e)). See Perez-Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 283 (1st Cir. 1993) (applying a functional analysis to timely motions under Rules 59 and 60). We review the district court's denial of a Rule 59(e) motion for abuse of discretion. See Kansky v. Coca-Cola Bottling Co. of New Eng., 492 F.3d 54, 60 (1st Cir. 2007). In performing that review, we are mindful that a material error of law is always

an abuse of discretion.  See Trainor v. HEI Hosp., LLC, 699 F.3d 19, 35 (1st Cir. 2012).

The filing of a Rule 59(e) motion does not afford the movant an opportunity to introduce evidence that was previously available.  See Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006).  Nor is such a motion a vehicle through which a party may "raise arguments which could, and should, have been made before judgment issued."  Harley-Davidson Motor Co. v. Bank of New England-Old Colony, 897 F.2d 611, 616 (1st Cir. 1990).

Mancini's motion to vacate was filed in utter disregard of these limitations.  Through it, he attempted to introduce evidence and arguments that were available to him all along.  To the extent that any portions of this proffer might have benefitted his opposition to summary judgment, he could — and should — have included those materials with his summary judgment papers.  A party's failure to submit readily available evidence or to make readily available arguments at summary judgment cannot be remedied through a Rule 59(e) motion.  See U.S. ex rel. Ge v. Takeda Pharm. Co., 737 F.3d 116, 125-26 (1st Cir. 2013).

That ends this aspect of the matter.  Given the fact that all of the late-arriving evidence and arguments associated with Mancini's motion to vacate were available to him well before the summary judgment proceeding matured, we do not hesitate to conclude that the district court acted comfortably within the

encincture of its discretion in denying the motion. See Harley-Davidson, 897 F.2d at 616.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the judgment of the district court is

**Affirmed.**